## CONWAY V. JOHN ET AL.

1. CORPORATIONS — TRANSFER OF STOCK.— Under the laws of this state, title to stock in a corporation, as against creditors, can only pass by transfer on the books of the company.

2. EVIDENCE — ORAL PROOF OF CONTENTS OF MISSING FILES.— The proper foundation being laid, the character and contents of the missing files in a cause tried before a justice of the peace may be established by oral evidence.

3. ATTACHMENTS BEFORE JUSTICES OF THE PEACE — SERVICE OF NOTICES ON NON-RESIDENTS.— Under the act of 1879, in relation to attachments before justices of the peace, requiring notices in certain instances to be posted in three of the most public places within the precinct, evidence showing that one of such notices was posted on the front door of the court-house, one on the side of the stairs leading to the justice's office, and one on a certain *corral* fence, and that "these places were then regarded, and would now be, three about as public places as could be found in the precinct," shows a sufficient compliance with the statute, as against a collateral attack upon the proceedings.

4. ATTACKING JUDICIAL SALE — INADEQUACY OF PRICE.— Ordinarily, inadequacy of price paid is not alone sufficient cause for setting aside a judicial sale, particularly of personal property of fluctuating value.

5. NO REDEMPTION FROM JUDICIAL SALE OF PERSONAL PROPERTY.— The right of redemption from a judicial sale of personal property does not exist in this state.

*Appeal from District Court of El Paso County.*

ON July 26, 1881, one of the appellees, viz., the Trinidad Gas Company, a defendant below, issued to David H. Irland its certificate of stock No. 25 for fifteen shares of the capital stock of said company, the shares being of the face value of $100 each, and registered upon the company's books in Irland's name.

On April 19, 1882, said shares of stock were still standing upon the books of the defendant company in the name of Irland, and on that day the Rifenburg Coal Mining Company, a copartnership composed of the defendants James M. John and Caldwell Yeaman, commenced an action before a justice of the peace, by attachment against Irland, and caused said shares of stock to be attached as the property of said Irland. Such proceedings were thereafter had in said cause that on May 5, 1882, judgment was rendered against Irland, and the shares of stock ordered by the justice to be sold to satisfy such judgment, which was done on May 22, 1882, the defendant John becoming the purchaser thereof at the constable's sale for the sum of $50.

Prior to the commencement of said attachment suit, viz., on November 22, 1881, Irland had assigned the certificate of stock to appellant Conway, but no assignment or transfer thereof to Conway was ever made upon the books of the defendant company, nor was there any request to have such transfer made until November, 1883, long subsequent to the purchase of said stock at constable's sale by the defendant John. Neither of the appellees had any knowledge or information, prior to November, 1883, that Irland had assigned said certificate, or that the plaintiff, Conway, made any claim thereto. The agreed value of the fifteen shares of stock at the time of the purchase at constable's sale by defendant John is $550.

This action was brought to set aside this sale, on ac-

count of the alleged invalidity of the judgment of the justice and the inadequacy of the price paid. The plaintiff also seeks, in the alternative, to redeem. The trial below resulted in a judgment for the defendant.

Messrs. WELLS, McNEAL & TAYLOR, for appellant.

Mr. J. M. JOHN, for appellees.

MR. JUSTICE HAYT delivered the opinion of the court.

The attack upon the judgment of the district court sustaining the title of appellee John to the stock in controversy is based upon four grounds:

(1) That the stock was not, at the time of the attachment proceedings, subject to attachment as the property of Irland, because of the previous assignment to appellant.

(2) That the stock could not be attached upon a writ issued by a justice of the peace.

(3) Irregularities in the proceedings in court, and attending the sale, sufficient, as it is claimed, to avoid the judgment and vitiate the sale.

(4) Inadequacy of the price paid.

It is admitted by the pleadings that the certificate of stock in controversy provided upon the face thereof that it was "transferable only upon the books of the company, in person or by attorney, on the surrender of this certificate." This was inserted by virtue of the following by-law of the company:

"Transfers of stock shall be made on the books of the company either in person or by attorney, and the possession of the script shall not be regarded as evidence of ownership, unless it shall so appear on the books of the company."

Express statutory authority for the making of such by-law is given the corporation in section 241, General Statutes of 1883, in this language: "The shares of stock

shall not be less than ten nor more than one hundred dollars each, and shall be deemed personal property, and transferable as such in the manner provided by the by-laws."

In addition to this, we find a subsequent section, requiring, *inter alia*, that a book shall be kept by the secretary or clerk, of such corporation showing the names of all stockholders, with their places of residence, the number of shares of stock held by each, etc., and providing, further, that "no transfer of stock shall be valid for any purpose whatever, except to render the person to whom it shall be transferred liable for the debts of the company, * * * unless it shall have been entered therein, as required by this section, within sixty days from the date of such transfer." Sec. 269, Id.

Here we have a clear provision of statute taking from the owner of stock the right to transfer it in accordance with the known rules of the common law, and substituting therefor another and different mode. This change was doubtless made for the purpose of furnishing record evidence of the title, and, in view of the plain and explicit language employed, the statute cannot be disregarded. Under its provisions, we are clearly of the opinion that, notwithstanding the attempted transfer from Irland to appellant, the stock remained subject to attachment at the suit of the former's creditors. *Fiske v. Carr*, 20 Me. 301; *Bank v. Cutler*, 49 Me. 315; *Bank v. Gridley*, 91 Ill. 457; *Association v. Cory*, 129 Mass. 435; *Northrop v. Turnpike Co.* 3 Conn. 544; *Weston v. Mining Co.* 5 Cal. 186; *Naglee v. Wharf Co.* 20 Cal. 530; *Murphy's Case*, 51 Wis. 519.

We are aware that in some jurisdictions somewhat similar provisions have been held to relate solely to the government of the corporation in the transaction of its corporate business, to advise it of the names of those entitled to vote, receive dividends as stockholders, etc., and that creditors should not be allowed to take advantage of

any failure to comply with such requirements. Such decisions have usually, however, been based upon statutes essentially dissimilar from those here under consideration, and frequently upon the construction to be given a by-law of the company, in the absence of express statutory restriction. But the decided weight of authority, as well as the better reason, we think, unite in support of the conclusion that when, as in this state, the statute of the state, as applicable to corporations, requires that shares shall be transferred in a particular mode, there must be at least a substantial compliance with the requirement in order to protect the property against future assignments or levies. *Bank v. Gridley, supra.*

At the time of these proceedings it was provided by statute that shares of the defendant in any corporation should be subject to be taken upon writs of attachment and sold to satisfy any judgment rendered against the defendant. Sess. Laws, 1879, p. 20. Every detail of procedure necessary to making the levy and sale seems to be fully provided either in this act or by sections 1447 to 1452, inclusive, of the General Laws of 1877. And an examination of the chapter in which these sections occur convinces us that said sections apply as well to attachments issued out of a justice's court as to those emanating from courts of record.

It was shown upon the trial below that the files in the attachment case had been lost, and could not be produced. Oral testimony of the character and contents of the lost papers was therefore properly admitted; and it has been held that, if the record does not show the jurisdiction of the justice, the fact may be proved by evidence *aliunde. Liss v. Wilcoxen,* 2 Colo. 85; *Hittson v. Davenport,* 4 Colo. 169; *Behymer v. Nordloh,* 12 Colo. 352; *Bacon v. Bassett,* 19 Wis. 54.

There can be no question, under the evidence, in reference either to the form or number of the notices posted in this case; but it is claimed that the evidence failed to

show that such notices were posted in three of the most public places within the precinct, as required by section 20 of the act of 1877. Said section reads as follows: "Sec. 20. Whenever affidavit shall be made that the defendant resides without the state of Colorado, and cannot be found therein, so that service of process cannot be personally had on him, or that he conceals himself or stands in defiance of an officer, with intent to prevent service of process upon him, it shall be the duty of the justice of the peace to cause notice of the attachment to be published by posting three notices of the levy of such attachment, and of the day and hour at which the trial of the cause will be had at his office, in three of the most public places within his precinct. If at the time set for trial the defendant does not appear to defend the action, the justice shall proceed to hear the cause and render judgment, as in cases where the summons has been personally served: provided, that such notices shall be posted at least ten (10) days prior to the day set for trial: and provided further, that the constable shall in such cases retain the summons until the day set for trial, so that personal service of the summons may be had before the day set for trial, if practicable."

The testimony of Judge Yeaman is to the effect that the constable, by his direction, posted the notices; that one of them was posted on the front door of the courthouse, one on the side of the stairs leading to the justice's office, and one on the fence in front of the Park livery-stable *corral;* and the witness further testifies that "these places were then regarded, and would now be, three about as public places as could be found in the precinct." It would certainly be very difficult for a witness to swear positively that three particular places in a town of several thousand people were the most public places in the precinct, and a construction of the statute which would require this to be done would be unreasonable. We think the evidence of the witness, in the absence of showing to the contrary, warranted the court

below in finding that the requirements of the act in this particular had been complied with.

The constable retained the summons for service until the day of trial, while appellant contends that it should have been returned at or before the time of filing of affidavit of non-residence, and an *alias* summons issued. It will be noticed, however, that under this act authority to publish notice of the attachment is derived from the affidavit, and not from the officer's return. The affidavit may be filed before any attempt is made to obtain personal service; and the order may be made at the time of the institution of the suit, or at any time thereafter. The act required the summons to be retained by the officer until the day set for the trial, and we see no objection to the course pursued in this case.

An examination of the evidence shows that all requirements of the statute were closely followed in the proceedings before the justice; and we must therefore hold that the same are valid, at least, as against this collateral attack; and, in obedience to well-established principles, the sale cannot be set aside solely on account of the smallness of the price paid. Ordinarily, inadequacy of price paid is not alone sufficient cause for setting aside a judicial sale, and this is particularly applicable to sales of personal property of fluctuating value. Ror. Jud. Sales, § 854; *Swires v. Brotherline*, 41 Pa. St. 135.

This sale appears to have been fairly conducted at a time and place previously advertised, as required by law. We discover no circumstances tending to impeach the transaction. The ruling of the court below refusing to set aside the sale cannot, therefore, be disturbed. Neither can the courts decree a right of redemption. Such right does not exist, in the absence of statutory enactment conferring it. Ror. Jud. Sales, § 906 *et seq.;* Freem. Ex'ns, § 314 *et seq.* The statutes of this state confer the right only in cases of sales of real estate.

The judgment is affirmed.

*Affirmed.*