## The First National Bank of Longmont v. Hastings et al.

CORPORATION STOCK—TRANSFER—NOTICE.

Stock must be transferred on the books of the company within the time prescribed by statute in order to pass title. Notice to an attaching creditor of an assignment and delivery of the certificates by the debtor to one who has neglected to procure a transfer on the company's books within statutory time does not affect his right to hold them under his writ.

*Appeal from the District Court of Boulder County.*

Mr. B. L. CARR and Mr. F. P. SECOR, for appellant.

Mr. H. M. MINOR and Mr. J. T. ATWOOD, for appellees.

THOMSON, J., delivered the opinion of the court.

On the 9th day of April, 1892, the First National Bank

VOL. VII—9

of Longmont commenced its action against Lewis H. Dickson and J. B. Wheatley to recover the amount of an indebtedness alleged to be due it from them.   A writ of attachment was issued in the cause, which was executed by levy upon five and one fourth shares of the stock of The Oligarchy Ditch Company and six shares of the stock of The Oligarchy Extension Ditch Company, all of this stock standing upon the books of the companies in the name of the defendant Dickson.   The attachment was made in the statutory manner, by delivering a copy of the writ to the secretary of each company, and receiving from him a certificate of the number of shares in Dickson's name upon his company's books.   On the 9th day of May, 1892, Vernon P. Hastings and Jennie A. Hastings filed their petition in intervention in the cause, alleging that they were the owners of the stock attached, and that the plaintiff knew they were such owners before causing the writ to be levied, and praying appropriate relief.   The plaintiff answered that in May, 1891, Dickson assigned and delivered the stock in question to the intervenors, but that they had not, prior to the institution of the suit and levy of the attachment, caused the stock to be transferred on the books of the companies issuing it, or taken any steps to procure its transfer.   The allegation in the petition of the plaintiff's knowledge of the ownership of the stock by the intervenors was not denied.   The replication was that the stock was purchased by the intervenors from Dickson, and assigned and delivered to them by him, on the 22d day of June, 1891, and that he at the same time gave them a written order upon the secretary directing him to enter the proper transfer.   The same person appears to have been secretary of both companies.   It is also averred that the petitioners on the same day presented the order to the secretary, informed him that they had purchased the stock and were its owners, and requested him to transfer it on the books of the companies, but he refused to do so, alleging, as his reason, that there was an assessment against the stock, and that the by-laws of the companies forbade a transfer until the assess-

ment was paid.  On motion of the plaintiff, judgment was entered upon these pleadings in its favor, and against the intervenors.  The latter appealed to this court, where the judgment was reversed, and the cause remanded for a trial of the issues of fact.  *Hastings v. Bank of Longmont*, 4 Colo. App. 419.  In accordance with our decision, a trial of the cause was had, resulting in a judgment in favor of the inter-venors, upon a verdict that they were entitled to the possession of the stock, and that its value was $1,125.  From this judgment the plaintiff appeals.

There is a singular disagreement between the admissions of the pleadings and the evidence in the case.  The answer to the petition in intervention alleges that all of the stock in controversy was assigned and delivered by Dickson to the intervenors in May, 1891.  The replication avers the assignment and delivery to have been made on the 22d day of June, 1891.  Dickson's order upon the secretary is dated June 22, 1891, and the testimony of Vernon P. Hastings, one of the intervenors, was that it was written on the day of its date, and that on that day, and immediately after receiving it, he demanded the transfer of the stock.  While the answer and replication differ as to the date of the assignment, they both agree that at the time when Hastings said he presented the order to the secretary, and requested the transfer, all of this stock had been assigned and delivered to the intervenors. But, notwithstanding this condition of the pleadings, the intervenors introduced in evidence the several certificates of the stock in dispute.  There were three of these certificates, all issued to Dickson, and assigned by him to the intervenors. One certificate, for three and one fourth shares of the stock of The Oligarchy Ditch Company, was issued on the 18th day of March, 1891; one, for two shares of stock in the same company, was issued on the 9th day of July, 1891; and one, for six shares of the stock of The Oligarchy Extension Ditch Company, was issued on the 9th day of July, 1891.  The date of the assignment of the two-share certificate was July 10, 1891.  The others were assigned in blank.  Mr. Hastings,

in the course of his testimony, stated that he received all these certificates at the time the assignments were written, and that they were written on the 10th day of July, 1891. The transaction concerning the certificates was had with this witness, Vernon P. Hastings, who was the only one of the intervenors who testified, and was the only witness who testified upon the subject of the certificates and their assignment. It conclusively appears from the evidence that, at the time he demanded the transfer of stock, two of the certificates were not in existence at all, and the intervenors had no title of any kind in the other.

The following is a copy of Dickson's order:

"Longmont, Colo., June 22, 1891.
"Secretary Oligarchy Ditch Company:—

"Please transfer to Vernon P. Hastings and Jennie A. Hastings, 16 shares of Oligarchy ditch stock, and all my interest in the Oligarchy Extension Ditch and reservoir.
                                        "L. H. Dickson."

It will be seen that this order did not request the transfer of the specific stock in controversy. It seems, from the evidence, to have been given in pursuance of some agreement or understanding between Dickson and the intervenors, which was regarded by the parties as amounting to a purchase of ditch stock; but it could have no reference to the shares represented by two of these certificates, because they had not yet been issued, and it was inoperative as to those represented by the other, even if the intention was to include them, because Dickson had not, at the time, made any transfer of his title in them to the intervenors.

For the purpose of showing a transfer to the intervenors of title to ditch stock, they introduced in evidence, against the plaintiff's objection, a deed executed to them by Dickson on May 1, 1891, conveying to them a certain tract of land, and all the water rights in any way pertaining or belonging to the land. The deed was improperly received. Water rights belonging to land, and stock in a ditch corporation,

are two essentially different kinds of property. A real estate owner may have the right to water for the purpose of irrigating his land without owning any ditch stock; and a stockholder in a ditch company may be without right to water for irrigation, or without land to irrigate. Water rights for irrigation are regarded as real property, and shares of stock in a corporation are personal property. The deed conveyed all rights in water pertaining to the land described, for the purpose of its irrigation, but it no more conveyed the grantor's water stock than it conveyed his horses.

As the intervenors disregarded the admissions of the pleadings concerning the assignment and delivery of the stock, and introduced evidence upon the subject, they are bound by their evidence, which is conclusive that the demand of transfer, averred and testified to, did not and could not apply to the greater portion of the stock in question, and that as to the residue it was nugatory. No steps were ever taken, after the assignment and delivery of the stock to the intervenors, to procure its transfer upon the books of the corporation, and there is therefore no question of diligence in the case.

It only remains for us to consider how the intervenors' rights in this proceeding are affected by the plaintiff's knowledge of the fact that the stock had been purchased by, and assigned to, them. Knowledge in the plaintiff of their title is admitted by the pleadings, and the evidence tends to show that it received notice of the assignment, after it was made, and prior to the attachment levy. The trial court was of the opinion that a sale and delivery of certificates of stock in an incorporated ditch company, without transfer upon its books, was good between the parties to the transaction, and as to all others having notice thereof, and so instructed the jury. In the absence of any statute upon the subject, the instruction would not be subject to criticism. But our statute provides that no transfer of stock shall be valid for any purpose, except to render the person to whom it shall be transferred liable for the debts of the company, unless it

shall have been entered in the proper book of the company within sixty days from the date of the transfer, by an entry showing to and from whom transferred. This provision applies to all corporations, except railroad and telegraph companies. General Statutes, sec. 269.

There is not much room for construction of this language. The assignment of stock certificates vests in the assignee an inchoate title, which for sixty days has the effect of a complete title; but unless within that time it is perfected by the entry of the transfer upon the books of the company, it expires, and the transfer becomes invalid; the title of the assignor has not been divested, and the stock is subject to attachment at the suit of his creditors. See *Conway v. John*, 14 Colo. 30.

But the statute ought not to be so construed as to require an impossibility, or hold an assignee who has, without avail, made every effort within his power to procure a transfer upon the books in accordance with the law, responsible for his failure, especially as against one acquainted with the facts. Such is the view taken by the supreme court in *Weber v. Bullock*, 19 Colo. 214. In that case Mr. Justice Goddard, speaking for the court, said:

"Shares of stock are liable to attachment and are the subjects of sale, delivery of possession being essential to a complete transfer of title, as in the sale of other personal property. The evident intent and purpose of the statute is to guard against the fraudulent or secret disposition of stock by making it the duty of the holders thereof to procure a transfer upon the books of the company, and thus furnish record evidence of their title and possession; and a vendee or assignee of stock, who ignores or willfully disregards the requirements of the statute by neglecting to have the same transferred upon the books of the company, may suffer the penalty of having the stock subjected to the payment of his vendor's debts. But, upon the same principle that the retention of the possession of chattels by a vendor may be explained by showing that a delivery was impossible, thereby rebutting

any inference of fraud, the failure to have the transfer of the stock made upon the books of the company may be shown to be without fault on the vendee's part, and that such failure occurred notwithstanding his honest but ineffectual effort to comply with the requirement of the statute. Notwithstanding a compliance with the requirement of the statute is essential to a transfer of the legal title to the stock, as held in the *Conway-John Case, non constat,* that courts of equity will not protect such title or equitable right as the assignee of the certificate may have when the question lies between such assignee and the attaching creditor of his assignor as to which has the better title, when it appears that the assignment is prior in time to the attachment and made in good faith and upon a valuable consideration, and where the assignee has done all in his power to comply with the requirements of the statute, and is prevented from obtaining such transfer as the law requires by the fault of others, and not from any neglect on his part."

The foregoing exposition of the law is binding upon us, and is, moreover, in entire accord with our own views upon the subject. It will be seen that while it is held that the want of proper transfer will be excused where diligent effort has been ineffectually made to procure it, and the failure is not the result of any fault or neglect of the holder of the stock, yet it is also held that he must do what is in his power to secure compliance with the statute. He cannot safely ignore or disregard its requirements. His duty in the premises is clear, and if he voluntarily neglects it, he is not in a position to complain when the statutory provision making his title invalid is invoked against him. It follows that the instruction was erroneous.

The plaintiff, having knowledge of the original assignment, is presumed to have had knowledge of what subsequently occurred in relation to the stock. If the want of transfer upon the books was the fault of the companies' officers charged with the duty of entering it, and not the fault of the intervenors, the plaintiff, by virtue of its first knowledge, which

put it upon inquiry as to any steps afterwards taken by them to perfect their title, would be affected with notice of that fact; but as the intervenors after receiving the stock made no attempt whatever to procure the required entry of transfer, and as the time allowed them for that purpose had expired long before the levy of the writ, the knowledge which the plaintiff had amounted only to knowledge that the intervenors by their default had lost their right to the stock, and that it belonged to their assignor, and was subject to attachment at the suit of his creditors.

We cannot do otherwise than reverse this judgment.

*Reversed.*