[No. 2305.]

RICHARDSON ET AL. v. THE LONGMONT SUPPLY DITCH COMPANY.

1. **Corporations—Assignment of Stock—Water Rights.**

Where the stock-book of a ditch company showed a stockholder to be the owner of 42 shares, but it did not appear that certificates had been issued for said stock, except for 15 shares, an assignment by such stockholder of 15 shares of her stock to a trustee, as collateral security for a debt, without designating any particular shares, and without surrendering or transferring any particular certificate, the company issuing to said trustee a certificate for 15 shares, without stating in said certificate that it was in lieu of any other certificate, was not in violation of a by-law of the company, requiring that shares of stock should be transferred by recording a certificate of transfer upon the stock-book, and indorsing the same upon the certificate of stock, or by the surrender and cancellation of the old certificate, and issuance of a new one of the same denomination as the old one.

2. **Same—Waiver.**

Where the stock-book of a corporation showed a stockholder to be the owner of 27 shares of stock for which it did not appear any certificate had been issued, and said stockholder assigned 15 shares as collateral security without surrendering, transferring, or designating any particular certificate, and the corporation issued to the assignee a certificate for the 15 shares, which the assignee accepted in good faith, and loaned money thereon, although said new certificate was issued in violation of the provision of a by-law requiring the surrender of the original certificate, by the issuance of the new certificate, under the circumstances, the corporation waived a compliance with the provision of its by-laws, and cannot repudiate such new certificate on that ground.

3. **Same—Pledge—Chattel Mortgage.**

Where a landowner executed a deed of trust to land, and a certain number of shares of the capital stock of a ditch

company, and at the same time made a separate assignment of the shares to the trustee, as collateral security for the debt, and provided in said contract of assignment that if the shares be not redeemed they should be sold in connection with the real estate described in the trust deed, and the ditch company issued and delivered to such trustee a certificate of stock for the number of shares assigned, the transaction was a pledging of the stock, as collateral security for the debt, and not a chattel mortgage, and the statute limiting the time of the validity of chattel mortgages was not applicable.

4. Corporations—Assignment of Stock.

Shares of stock in a corporation as between the parties to the transaction may be transferred by deed. The provision of the statute, that shares shall be transferable only on the books of the corporation in such manner as the articles of association or by-laws may prescribe, is not required to be observed in order to pass title, as between the parties to the transfer, and only the rights and interest of third persons are affected by an omission to comply with the statute.

5. Same—Pledges—Foreclosure—Notice.

Where shares of the capital stock of a corporation were pledged as collateral security for a debt, and the transfer to pledgee was duly entered upon the books of the corporation, such entry was notice to a subsequent purchaser from the pledgor, of the pledge and also of a foreclosure of the pledge, and a purchaser at the foreclosure sale had good title as against such subsequent purchaser, although the transfer at the fore-closure sale was not entered upon the books of the corporation.

6. Corporations—Transfer of Stock—Waiver.

Where a corporation refused to recognize the validity of a certificate of capital stock, claiming that it was an excess issue, in an action by a subsequent purchaser of said certificate to compel the corporation to recognize its validity, it was no defense to the action that such subsequent purchaser had not presented the certificate and transfer thereof for registry.

*Appeal from the District Court of Boulder County.*

Mr. EDWARD D. UPHAM, for appellants.

Mr. HARVEY RIDDELL, of counsel.

Mr. H. M. MINOR, for appellee.

GUNTER, J.

March 16, 1891, Mrs. Marshall owned 320 acres of land and 42 shares of the capital stock of appellee, a ditch corporation, which shares stood upon the stock-book in her name as owner. Fifteen of the shares were used in obtaining water for the irrigation of the land. Upon that date, to secure two notes of even date, The Middlesex Banking Company, payee, she gave a trust deed, usual form, Richardson, trustee, upon the land, and 15 shares of her said stock. The trust deed specifically mentioned 15 shares of stock as incumbered thereby, but did not designate, by certificate number or otherwise, what particular shares were thereby incumbered. This deed authorized the trustee, in case of default in payment of the secured indebtedness, to sell the land and the stock. Upon this date, March 16, 1891, as stated above, 42 shares of the capital stock of appellee stood on its stock-book in the name of Mrs. Marshall, as owner. Whether certificates had issued to Mrs. Marshall for this number of shares does not appear; there is evidence of only one certificate having been issued prior to this date to Mrs. Marshall. This certificate, No. 441, was for 15 of the above shares, and, according to the stock-book, was then owned by Mrs. Marshall. Upon this date Mrs. Marshall, as a part of the transaction in which the notes and trust deed were given, by a separate written instrument wherein is recited her above indebtedness to The Middlesex Banking Company, assigned 15 shares of her stock, the specific shares not being designated by stock certificate number, or otherwise, to Richardson, trustee, as security for said indebtedness, and therein directed the secretary of the company to make the necessary transfer on its books. This written assignment was presented to the secretary November 17, 1891, and upon that date he certified thereon that as directed thereby he had

made the necessary transfer of said shares to Richardson, trustee, on the books of the company, and upon that date he issued a certificate of stock properly authenticated .and in the form in ordinary use by the company, running to Richardson, trustee for The Middlesex Banking Company, in the number of 15 shares. The account of Mrs. Marshall upon the stock-book was charged with the stock thus issued to Richardson, and the stock-book showed the issuance of this certificate of stock No. 449 to Richardson, trustee, as collateral. The stub from which the certificate of stock was detached showed, by notations thereon, the issuance of the certificate to Richardson, trustee, and that the certificate was intended by appellee company to cover the same shares of stock as were embraced in the above certificate for 15 shares theretofore issued to Mrs. Marshall. There was nothing, however, in certificate No. 449, issued to Richardson, to indicate that it was issued as a transfer of or in place of any particular certificate. The stock-book, if examined November 17, 1891, would have shown that Mrs. Marshall had standing in her name, as owner, on November 17, 1891, 42 shares of the capital stock of appellee, and that on that date 15 shares of this stock had been transferred to Richardson, trustee. The stock-book would have disclosed at that time that after this transfer of 15 shares to Richardson only 27 shares remained on the stock-book in the name of Mrs. Marshall, but it would not have disclosed that the certificate issued to Richardson was in place of or was a transfer of any particular certificate. This book disclosed simply that 15 shares of the 42 shares standing in the name of Mrs. Marshall on November 17, 1891, had been, on November 17, 1891, transferred to Richardson, trustee, as collateral, and that a new certificate, No. 449, for such 15 shares had been issued to him.

This certificate was upon that date delivered to Richardson, who has since remained in possession of it, and who received it in good faith, believing it to be what its recitals stated it to be, an effectual transfer to him as trustee for The Middlesex Banking Company of 15 shares of the capital stock of appellee.

July 24, 1893, a certificate for 15 shares of stock running to Mrs. Marshall, being the certificate for that number of shares mentioned as standing in her name on November 17, 1891, and which certificate bore a blank indorsement of date July 18, 1891, was sent to the secretary of appellee company by O. W. Marshall, the agent of Mrs. Marshall, and one Porter, with the request to re-issue. In pursuance of this request two new certificates were then issued, certificate No. 479 to Porter for 10 shares, and certificate No. 480 to Mrs. Marshall for 5 shares. Williamson became the owner of the certificate for 10 shares September, 1897, and November, 1893, Mrs. Marshall hypothecated her certificate for 5 shares as collateral to one Dille, and caused the same to be noted on appellee's books. At the time of the institution of this suit, February 24, 1899, no stock stood upon the books of appellee in the name of Mrs. Marshall. When or to whom the 27 shares standing in her name November 17, 1891, after the issuance of the certificate to Richardson, were transferred, does not appear, nor is it material to this controversy. For aught that appears in the evidence no stock appeared upon the 'stock-book of defendant in the name of Mrs. Marshall when the above certificates were issued to Porter and Mrs. Marshall.

The above written assignment of Mrs. Marshall to Richardson provided that until default should be made and declared in the payment of the above secured indebtedness, all stockholder's rights should remain in her. August, 1897, the above trust deed,

on account of default in the payment of the secured
indebtedness, was foreclosed, and the land covered
thereby and the 15 shares of stock contained in the
assignment to Richardson, trustee, of November 16,
1891, were conveyed to The Middlesex Banking Com-
pany.   October, 1897, The Middlesex Banking Com-
pany executed a warranty deed conveying to Farm
Investment Company the land and the 15 shares of
stock, specially mentioning the stock, covered by the
trust deed and contract of assignment.   October,
1897, Farm Investment Company executed a trust
deed on the above property to secure an indebtedness
of it to The Middlesex Banking Company.

The water called for by the 15 shares of stock
for irrigation of the above land was obtained from
appellee during 1896, -7 and -8, and whether earlier
does not appear.   From 1895, to April, 1898, inclu-
sive, Richardson, trustee, paid the assessments
levied by appellee on this stock.   November, 1898,
appellee notified Richardson that the certificate held
by him was void, being an over-issue, that water
would no longer be delivered upon the stock, and
that Richardson would no longer be recognized as
a stockholder.   The reason assigned for refusing to
recognize the stock, and refusing water upon it, was
not that Richardson and Farm Investment Company
had not presented the certificate for transfer, but
was that the certificate was an over-issue, and for that
reason, void.   The purpose of this action was to
obtain a decree prohibiting appellee from refusing
to deliver water on the stock and to prohibit appellee
from declining to recognize Richardson as a stock-
holder.

The question before us is: was this certificate, at
the time of the institution of this suit, a valid certi-
ficate, and was Farm Investment Company at such
date its equitable owner?   Could Farm Investment

Company at such date have compelled appellee to enter a transfer of the certificate to it as owner?

1. The by-laws of appellee provided that shares of stock should be transferred by recording a certificate of transfer upon the stock-book, and indorsing the same upon the certificate of stock, or by the surrender and cancellation of the old certificate and issuance of a new one of the same denomination as the old one. It is said this provision of the by-laws was not observed in the issuance of certificate No. 449 to Richardson, as trustee, and that this violation of the by-laws invalidated the certificate.

November 16, 1891, when Mrs. Marshall assigned to Richardson, trustee, 15 of the 42 shares of stock standing in her name as owner, on the stock-book, she did not designate through the mention of a certain certificate, or otherwise, what particular 15 shares she intended to assign, she simply assigned 15 shares of her stock. As 42 shares stood in her name, and as she owned them, according to the stock-book, and according to other evidence before us, free of any lien, no reason appears why she should have designated any particular shares. So far as appears from the evidence no certificate had been issued for any of the shares owned by Mrs. Marshall except the one certificate, No. 441, for 15 shares. Richardson presented his assignment of 15 shares, the stock-book showed 42 shares standing in Mrs. Marshall's name, and for aught that appears no certificate had ever been issued for the 15 shares assigned, and there was no certificate to surrender, so we do not think it appears that the by-laws of appellee were violated in the issuance of this certificate. True it is, a notation appears on the stub from which certificate No. 449 was detached, which indicates that it was the intention of the secretary that certificate No. 449 should be a transfer of or in lieu of No. 441 for 15

shares, which certificate No. 441 does not appear to have been surrendered or cancelled. Certificate No. 449, however, makes no such disclosure, nothing appears upon it to indicate that it was issued in lieu of any particular certificate; nor does it appear that Richardson knew what particular shares, or what particular certificate, it was intended to cancel and to re-issue to him. The stock-book showed stock in the name of Mrs. Marshall, Richardson presented his assignment for 15 shares of her stock, and in good faith received the new certificate certifying him to be the owner of 15 shares of her stock, such number of shares were in her name on the stock-book, and the account of Mrs. Marshall was charged with the certificate after its issuance to Richardson, trustee.

We do not think it affirmatively appears that the by-laws were violated in the issuance of this certificate, but if we assume that it does so appear, it does not seem to us just that this appellee, after it has issued and delivered this certificate as a valid certificate, and Richardson has received it in good faith, believing it to be what it represents, and the beneficiary of the trust has loaned money upon the certificate, that appellee ought to be permitted to repudiate the certificate upon the ground that one of its by-laws was violated by it in the issuance of the certificate, and the law does not permit it to do so. By the issuance of the new certificate under the circumstances stated, even if issued in violation of the recited by-laws, appellee waived a compliance with the provision of its by-laws requiring a surrender of the original certificate, and the new certificate, No. 449, issued to Richardson, trustee, although issued in violation of appellee's by-laws, is valid.—*N. Y. & N. H. R. R. Co. v. Schuyler et al.*, 34 N. Y. 30, 78, 90; Thompson's Commentaries on the Law of Corpora-

tions, Vol. 2, §§ 2378, 2595; 3 Clark and Marshall, Priv. Corp., § 592.

2. It is contended that the trust deed which incumbered the real estate and purported to incumber 15 shares of stock in appellee company, was as to the stock a chattel mortgage; that as the notes secured thereby exceeded $2,500, and as the trust deed was not foreclosed for more than five years after the recording of the trust deed, that the trust deed, when foreclosed, had lost its validity as a lien upon the shares of stock, and that having lost its validity as a lien no interest whatever in the shares of stock was passed by the trustee's deed. This limit as to time of the validity of a chattel mortgage is prescribed by Mills' Ann. Stats., Vol. 1, section 387, p. 562. The lien, however, which was foreclosed, and through the foreclosure of which The Middlesex Banking Company deraigns its title, is not by this trust deed. By a lien created through a pledging of the certificate of stock, and an entry of such transfer appearing upon the books of the company when the loan was made, and the trust deed given contemporaneously therewith, Mrs. Marshall, by a written contract of assignment, assigned all her interest in 15 shares of stock to Richardson, trustee, as collateral security, and directed the secretary of appellee to make the necessary transfer on its books. In such contract of assignment the transfer to be made in pursuance thereof is designated a pledge, and it is provided in such contract of assignment that if the pledge be not redeemed it shall be sold in connection with the real estate described in the trust deed, and in accordance with its provisions. This assignment was presented to the secretary of appellee, and he certified upon it that he had made the necessary transfer of the shares of stock to Richardson, trustee, on the books of said company, and what he did was this: He

issued a certificate for the 15 shares running to Richardson, as trustee for The Middlesex Banking Company, and delivered the same to Richardson who, as trustee, has held the certificate since. The certificate does not disclose what particular 15 shares of the 42 shares of stock held by Mrs. Marshall were thereby transferred to Richardson. The stock-book shows a charge to Mrs. Marshall of these 15 shares of stock, and the issuance of a certificate for them, that is, a transfer of them to Richardson, trustee, as collateral. The validity of this transfer of stock is determined by our law as it stood in 1891. Mills' Ann. Stats., Vol. 2, section 508. This provided *inter alia* that a transfer of stock, to be valid, must be entered upon the books of the company, showing from whom and to whom the transfer was made. The entries were made and the stock effectually transferred to Richardson, trustee, in full compliance with the law as it then stood. This transaction was a pledging of the stock as security for the indebtedness from Mrs. Marshall to The Middlesex Banking Company.—Cook on Stock and Stockholders (3d ed.), § 464; Thompson's Commentaries on the Law of Corporations, Vol. 2, § 2619.

This valid lien was foreclosed as provided in the contract of assignment creating it, in August, 1897, and at the foreclosure The Middlesex Banking Company became the purchaser of the stock. A deed was made on that date transferring the 15 shares of stock to The Middlesex Banking Company.

3. The Middlesex Banking Company at no time requested a transfer of the 15 shares of stock, so purchased, on the stock-book of appellee. It is said that the trustee's deed was ineffectual to pass any interest whatever in the shares of stock to The Middlesex Banking Company because shares of stock cannot be transferred by deed and *First National Bank v. Hast-*

*ings,* 7 Colo. App. 135, is cited in support of such contention. There, shares of stock standing on the stockbook in the name of an attachment debtor were levied upon under a writ of attachment, third parties intervened, claiming the stock by an alleged prior transfer. The court sustained the attachment because the stock had not been transferred within the time required by statute, and no excuse had been shown for the failure to observe such requirement. In the course of the evidence a deed was introduced conveying certain land and all water rights belonging thereto to interveners, which deed they claimed transferred to them under the description of water rights the shares of stock in question. The court said that water rights are real property and shares of stock in a corporation are personal property, and in effect held that the shares of stock did not pass by the deed because not described therein. It does not hold that shares of stock cannot be transferred as between the parties by a deed. Shares of stock are personal property and there is no reason why, as between the parties, they cannot be transferred as any other personal property.

Speaking of the general law expressly providing that shares shall be transferable only on the books of the corporation in such manner as the articles of association or by-laws may prescribe, it is said:

"The purpose of such a requirement is to be taken into consideration in construing it, and in determining the effect of a failure to comply therewith * * * A requirement of registration of transfers, therefore, must, according to all decisions, be given such effect as is necessary to accomplish this purpose."—Clark and Marshall, Private Corporations, Vol. 3, § 585.

As between the parties there is no reason for observing this requirement of the statute law.

"It is well settled, * * * that an unregistered transfer gives the transferee a perfect, equitable title as between him and the transferrer, or any person standing in the shoes of the transferrer * * * All the seller can do, that corresponds at all to the delivery of personal chattels in other cases of sale, is, to hand over to the buyer his certificate, with a sufficient assignment by deed or otherwise to entitle him to a transfer of the shares on the books of the company. When the seller has done this, his power and duty in the matter are ended, and it is at the option of the purchaser whether the transfer shall be recorded or not. * * * It is difficult to see any substantial difference between the position of this plaintiff after the sale and assignment of the shares to him by the owner and before a transfer was made on the books, and that of a grantee in a deed of land before his deed is recorded. In both cases the seller has parted with his title, and, as to him, the buyer has acquired it. It is only third persons in either case whose rights or interests are affected by the omission."—Clark and Marshall, Private Corp., Vol. 3, § 586.

The transfer by deed made by the trustee, Richardson, to the transferee, The Middlesex Banking Company, on August, 1897, was effectual to pass the equitable title of the 15 shares of stock to such transferee. The same is true of the transfer by deed of the 15 shares of stock by The Middlesex Banking Company to Farm Investment Company in October, 1897. At the time of the institution of the present suit the legal title to the stock was in Richardson, trustee, the equitable title of the stock in Farm Investment Company. Farm Investment Company was in position to demand an entry of a transfer to it on the books of the company, it was the equitable owner of the stock with reference to the company. The parties who purchased the remainder of Mrs.

Marshall's stock after November 17, 1891, were charged with notice of the pledging of the stock to The Middlesex Banking Company by the notations upon the stock-book of the company, and by such notations were also charged with notice of the foreclosure of the pledge and the sale by The Middlesex Banking Company to Farm Investment Company.—*Bradford v. Carpenter*, 13 Colo. 30.

"The assignment of the certificate of stock estops the transferrer from claiming any further title in the stock as against subsequent *bona fide* transferees, although such assignment be not registered.   *   *   *   The transferrer himself is not allowed to impeach his unregistered transferee's title.   *   *   *   That the transferrer cannot question the completeness of his transfer of title is a rule binding not only on himself, but also upon his assignees in bankruptcy or insolvency.  The transferrer is estopped also from attacking the assignment of the certificate on the ground of informalities in the transfer."—Cook on Stock and Stockholders and Corporation Law, Vol. 1, § 378; Morawitz on Private Corporations (2d ed.), § 174.

It is not within the purpose of the statute to invalidate the transfer as between the transferrer and the transferee by the failure to register the transfer.—*Parrott v. Byers*, 40 Cal. 614.

4.   Mrs. Marshall pledged her certificate of stock for 15 shares, No. 449, to secure the loan made by The Middlesex Banking Company.  The certificate was issued to the trustee, who was to be the custodian of the certificate, and the same was delivered to him. This transfer was properly entered upon the books of the company so that any one thereafter acquiring any of Mrs. Marshall's shares was charged with notice of this lien and charged with notice of anything that might be done under the lien.  Under the lien

the stock was sold to The Middlesex Banking Company, and by The Middlesex Banking Company was later sold to Farm Investment Company, so that Farm Investment Company is now the equitable owner of this stock with reference to the appellee corporation, Mrs. Marshall, and other transferees of this stock from Mrs. Marshall.

Appellee company declined to recognize this certificate of stock which stands in the name of Richardson, or to recognize any rights under it, for the reason as assigned by it that the certificate of stock is an excess certificate and a nullity. The reason assigned was not that The Middlesex Banking Company, or Farm Investment Company, had not presented the certificate for register, but because the certificate under which they claimed was and is a void certificate because an excess certificate.

Under the position taken by appellee company it would have been useless for Farm Investment Company to have presented this certificate for registry.

"When the corporation refuses to allow a registry for reasons other than those connected with the mere formalities of registry, or for reasons not given to the applicant, it waives its right to insist on them, and cannot afterwards claim that the appellant did not conform to such technicalities."—Cook on Stock and Stockholders and Corporation Law, § 383.

In this case the facts are such that if Farm Investment Company had demanded the issuance to it of a certificate of stock for the 15 shares, it would have been the duty of appellee to have granted it. This being true, and as Farm Investment Company, the equitable owner of this certificate, and Richardson, trustee, in whom rests the legal title, joined in the request for recognition of their rights under the certificate, it was error in the lower court to deny them.

We can see no reason for a retrial of this case. The judgment should be reversed, with instructions to the lower court to grant the relief prayed for in the complaint.

Judgment reversed. *Reversed.*