[No. 2533.]

## TALCOTT v. MASTIN.

1. **Appellate Practice—Written Evidence—Findings Not Conclusive.**

The rule that the appellate court is concluded by the findings of the trial court on conflicting evidence, does not apply where all the material evidence is in writing.

2. **Sales—Acceptance—Water Rights—Commission.**

Defendant offered to sell his land at a certain price, and stated that the water rights to be conveyed with the land consisted of certain interests in certain ditches and a reservoir named and all water rights to the land belonging. Plaintiff, his agent, notified him that he had a purchaser at the price, the money being deposited in bank to close the sale, but directed defendant to include in his deed certain shares of stock in a reservoir company not mentioned in defendant's statement of water rights. Defendant declined to include the reservoir stock and the purchaser withdrew his money from the bank and declined to purchase. Held, that plaintiff had not secured a purchaser able, ready and willing to purchase on the terms offered by defendant, and plaintiff was not entitled to commissions.

3. **Same.**

Defendant offered land for sale at a certain price. Plaintiff, his agent, notified him that he had a purchaser at the price with money deposited in bank, and directed defendant to include in his deed certain shares of stock in a reservoir company not included in defendant's offer. Defendant wrote his agent, declining to include the reservoir stock in the sale at the price offered, but stated a price at which he would sell the reservoir stock, and at the same time wrote to his attorney, directing him to prepare a deed to the proposed purchaser and directed him not to include the reservoir stock in the deed, but stated he would transfer the stock "to the purchaser by blank power of attorney." Defendant refused to include the reservoir stock and the sale failed. Held, that defendant's letter to his attorney was not an acceptance of the offer by the proposed purchaser, and plaintiff was not entitled to commission.

*Appeal from the District Court of Delta County.*

Mr. A. R. KING, for appellant.

Mr. MILTON R. WELCH, for appellee.

MAXWELL, J.

This was an action to recover commissions on a sale of real estate.

Trial to the court.

Plaintiff had judgment.

The facts are:

Previous to January, 1900, defendant, owner of a ranch in Delta county, had listed the same for sale with plaintiff, at an agreed commission.

January 15, 1900, plaintiff sent defendant the following telegram:

"Will you take fifty-five hundred dollars for your ranch—twenty-five hundred cash, balance within three years at six per cent. interest? Answer immediately."

To which defendant replied:

"Bottom price six thousand, land and buildings; buyer pay appraised valuation furniture, live stock and all expenses."

And the same date wrote plaintiff as follows:

"Your telegram received. We sent you the following reply: Six thousand bottom price; buyer pay appraised valuation furniture, live stock and all expense—which we herewith confirm.

Do not send any further offers, as this is the lowest price.

Will accept the terms the interest on the mortgage payable every three months in advance, and all the expenses of the transfer and the mortgage to be paid by the purchaser."

January 16, 1900, plaintiff wrote defendant:

"Your letters of Nov. 11th and 14th, 1899, quoting $6,000.00 for your ranch and all improvements, the land having been placed in my hands to sell. I find upon careful investigation that you have a water right for about half of your ranch only. * * * Kindly state explicitly just what your water

right consists of, as in the event of a sale, all water rights and privileges will have to be embodied in the warranty deed.''

January 20, 1900, defendant wrote plaintiff:

''In response to your favor of Jan. 16th, would say that, so far as we know, the ranch is amply provided with water. Nor have we ever heard that the supply was insufficient. As to our rights to water, we make the following extract from our deed: Together with my undivided one-fifth (1-5) interest in and to the Settle Ditch; also my undivided one-fourth ($\frac{1}{4}$) interest in and to the Shepard Ditch; also my undivided one-fourth ($\frac{1}{4}$) interest in and to the Twin Lakes Reservoirs and any and all water rights to the land belonging. Terms we stated in our letter of Jan. 15th. The deed to be a bargain and sale deed, giving him all the lands, buildings and water rights, be it more or less, as the buyer knows more about it than I do.''

January 25, 1900, plaintiff wrote defendant:

''Yours 20th received. I have on deposit in The Farmers and Merchants' Bank, Delta, Colorado, $2,500.00, as first payment on your ranch and all improvements, and $52.50 as 3 months' interest at 6 per cent. interest in advance on $3,500.00. The deposit is made, but is held subject to your making absolute perfect title. Kindly make warranty deed to Archibald M. Carpenter of Delta County, Colorado, and include in the warranty deed ten shares of the capital stock of the Park Reservoir Co., as per enclosed certificate from the Secretary of the Park Reservoir Company under the Ditch Co. seal, certifying that you hold certificate No. 10 for 10 shares under date of April 20th, 1896, together with all the other water rights as stated in your letter as belonging to the place, and same as recorded in your deed.''

On the same date there was deposited in The Farmers and Merchants' Bank of Delta, by plaintiff and A. M. Carpenter, the following document, together with Mr. Carpenter's check on The First National Bank of Gunnison for $2,552.50:

### "ESCROW.

"The Farmers & Merchants' Bank.

"The enclosed two thousand five hundred and fifty-two and 50-100 dollars is left in escrow upon the following conditions: First, that James Talcott is to convey all his right and title in and to his Surface Creek ranch of 160 acres, together with any and all water rights appertaining to said ranch. The money is deposited upon the express condition that the title is good and valid and deed is to include certificate for 10 shares of stock in The Park Reservoir Company. If James Talcott is unable to make a clear and sufficient title, the enclosed money is to be returned to A. M. Carpenter.

The deed is to convey land and all water rights to Archibald M. Carpenter.

The sale is to be conducted through W. H. Mastin as agent for James Talcott.

A. M. CARPENTER."

January 30, 1900, defendant wrote plaintiff:

"The ten shares of stock in the Park Reservoir Co. is a special investment. It cost us to date $243.75, as per attached memo., and we will transfer it to them for that amount plus the interest on each assessment to date."

February 3, 1900, plaintiff wrote defendant:

"I have your favor of Jany. 30, 1900. * * * So far as the 10 shares of the Park Res. Co. stock is concerned, it is not necessary to have the same inserted in the deed, as it is really personal property, yet it is customary here and there can be

no harm done by either having it inserted in the deed or left out."

February 5, 1900, plaintiff wrote defendant:

"Yours Jany. 30th, enclosing memorandum of ditch assessments, received. This stock is part of the water rights appertaining to your ranch, and these assessments have accrued on account of this water right being used upon your ranch. You have always agreed to give all the water rights belonging to your ranch, and this bargain for sale was based upon this consideration and accepted by you and Mr. Carpenter, and *this is the only way this sale will go through, and I will thank you to write Mr. King to turn this stock over to Mr. Carpenter* with the other papers. This water has always been used upon this ranch, and is known as one of the water rights. There is only sufficient water with that 10 shares to irrigate but half the ranch. Mr. Koehler has been furnishing the balance of the water for several years. Without any water, your ranch is practically worthless. Kindly instruct Mr. King to close this deal up immediately upon the terms of your agreement in your several letters, that there may be no additional delay, and greatly oblige."

February 8, 1900, defendant telegraphed plaintiff:

"Withdraw offer Park Reservoir stock; worth one thousand dollars; may want it for Hart ranch." And the same date wrote plaintiff:

"We wired you to-day as follows: Withdraw offer of Park Reservoir stock; worth $1,000.00; may want it for Hart ranch—which we herewith confirm. We understand that the Hart ranch is not very liberally supplied with water, and it may be necessary for us, in order to rent or sell that property, which is also in your hands, to hold this stock, which is worth to us at least $1,000.00, and we would not transfer

it under that price. Kindly send us at once a full and detailed account of the Hart ranch water rights, so that we may know where we stand regarding that property.''

February 13, 1900, defendant wrote plaintiff:

''In reply to your favor of Feb. 5th, would say that I wrote and telegraphed to you on Feb. 8th regarding the Park Reservoir Co. stock which I hold. Upon investigation I find, as you are probably aware, that this is purely an outside investment and is not in any way connected with the water right belonging to the Francis Talcott ranch. I am willing to transfer the stock to Mr. Carpenter for the fair market value, which is the price I quoted you in my telegram and letter of the 8th inst.

The Park Reservoir stock, however, is for sale only in case I do not need it in order to render the Hart ranch marketable either for lease or sale. All I agreed to turn over to Mr. Carpenter was the rights set forth in the deed, an abstract of which rights I sent you when you asked for it.''

February 16, 1900, plaintiff wrote defendant:

''Upon receipt of your telegram Feby. 8th, formally withdrawing your proposition for all your ranch, including any and all water rights which had been accepted by Mr. A. M. Carpenter, the money deposited was withdrawn.

''Considering the fact that I have consummated the sale for you and upon terms dictated by you, which you, after the money was deposited, declined to carry out your part of the agreement, I have fully the commission which should have been paid me, if you had carried out your proposition, and I herewith enclose you bill for $300.00 commission, which I trust you will remit at an early date.''

There was some other correspondence between

the parties, which is not considered pertinent to a determination of this case.

February 9, 1900, Mr. Carpenter, the proposed purchaser, with the consent of the plaintiff, withdrew his money from the bank, at which time the escrow agreement was endorsed:

"Recd. the $2,552.50 this 9th day of Feby. 1900.
A. M. CARPENTER,
W. H. MASTIN, Agent."

The plaintiff testified that Mr. Carpenter withdrew his money from the bank and terminated the negotiations for the reason that The Park Reservoir Co. stock had been withdrawn from the deal by defendant's telegram of February 8th. Mr. Carpenter corroborated this.

The rule that the appellate court is concluded by the findings of the trial court on conflicting evidence, does not apply to this case, as all of the material evidence is in writing.—*Colorado D. G. Co. v. Dunn Co.*, 18 Colo. App. 409; *Stuart Co. v. Asher et al.*, 15 Colo. App. 403.

Several propositions are argued by counsel for defendant in support of his contention that the judgment of the trial court should be reversed, but a determination of this appeal may be arrived at by the consideration and determination of one question only, viz: Did the agent (plaintiff) procure a purchaser, able, ready and willing to purchase defendant's property or enter into a binding contract to do so upon the terms proposed by defendant?—*Ross v. Smiley*, 18 Colo. App. 204-208, and cases cited.

Defendant's proposition (the limit of plaintiff's authority in the premises) was contained in his telegram of January 15 confirmed by his letter of the same date, in which he stated that his price for the land and buildings was $6,000.00, buyer to pay all expenses.

January 16, plaintiff wrote defendant:

"Kindly state explicitly just what your water right consists of, as, in the event of a sale, all water rights and privileges will have to be embodied in the warranty deed."

In reply to which defendant wrote plaintiff, January 20:

"As to our rights to water, we make the following extract from our deed:  Together with my undivided one-fifth (1-5) interest in and to the Settle Ditch; also my undivided one-fourth ($\frac{1}{4}$) interest in and to the Shepard Ditch; also my undivided one-fourth ($\frac{1}{4}$) interest in and to the Twin Lake Reservoirs, and any and all water rights to the said land belonging."

January 25, plaintiff acknowledged receipt of the defendant's letter of the 20th, and wrote plaintiff:

"Include in the warranty deed ten shares of the capital stock of The Park Reservoir Co."

Same date, the escrow agreement was deposited in the bank, whether before or after plaintiff's letter of that date was written does not appear from the testimony, and is immaterial.

It is plaintiff's contention that the escrow agreement was the proposed purchaser's acceptance of the defendant's proposition, and the two—proposition and acceptance—made a binding contract between the seller and the purchaser.

This contention is manifestly without merit, as incorporated in the acceptance is an *express condition* that "deed is to include ten shares of stock in The Park Reservoir Co.," in addition to the property which the defendant proposed to sell.

This so-called acceptance by Carpenter was not an acceptance of the proposition made by defendant, but a counter proposition by which Carpenter attempted to include in the sale the reservoir stock,

which necessitated an acceptance upon the part of the defendant to make a binding contract.

· The defendant never accepted the counter proposition; on the contrary, he made a counter proposition as to the reservoir stock, as shown by his letter of January 30, to the effect that he would transfer The Park Reservoir Co. stock for what it had cost him, $243.75, which counter proposition was withdrawn by defendant's telegram of February 8th, the receipt of which telegram caused Carpenter to withdraw his money from the bank and terminate the negotiations.

There was no meeting of the minds of the parties upon the subject-matter of the contract, which is necessary, in order to constitute a contract. Neither of the parties assented to the counter proposition of the other. At no time did the proposed purchaser, Carpenter, accept the proposition made by defendant, as his so-called acceptance was coupled with a modification or condition which was equivalent to a rejection of the proposition.—*Davis v. Thomas,* 28 Colo. 303-307.

In Lawson on Contracts, §§ 15-16, the doctrine is thus stated: .

"The acceptance must be absolute and unconditional. Thus, if A offers to B to do a certain thing and B accepts conditionally or introduces some new term into his acceptance, his answer is either a mere expression of a willingness to negotiate, or it is in the nature of a counter proposal on his part. This conditional acceptance being a counter proposal, is not binding until it is accepted (and communicated) by the original proposer. The offer must be accepted exactly as it is made. The acceptance must, in every respect, meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing them just as they stand; for there is no contract if

there is a variance of any kind between the terms of the offer and the acceptance. Like a conditional acceptance, an acceptance at variance with the terms of the offer is a counter proposal, which, to bind the party to whom the original offer was made, must be accepted.''

Counsel for appellee contend that appellant, in a letter dated January 30, to Mr. King, his attorney, accepted the terms made by Carpenter in the escrow agreement.

This letter contains the following, upon which this contention is based:

''You will please not put in the deed 10 shares of the stock of The Park Reservoir Co., as we will transfer that stock to the purchaser by blank power of attorney. You will, however, put the same in the mortgage.''

Standing alone, the above extract from the letter of January 30 might be held to have the effect contended for by counsel.

When considered in connection with other correspondence hereinbefore set forth, it clearly appears that it was not an acceptance upon the part of the defendant of Carpenter's counter proposition, but simply indicated the manner in which the transfer of the stock would be made in the event it was purchased upon the terms proposed by defendant.

For the reasons above stated, the conclusion is, that plaintiff did not procure a customer ready, able and willing to purchase the property of defendant, or enter into a binding contract to do so, upon the terms proposed by defendant, and, therefore, the judgment should have been for the defendant.

The evidence of the alleged contract between the seller and the purchaser rests wholly in the correspondence set forth in the record. It fails to prove a contract.

32

A re-trial could serve no useful purpose. The judgment will be reversed, with directions to the court below to dismiss the action.

*Reversed.*

*On Petition for Rehearing.*

It is settled in this state that a water right is real estate, not personal property.—*Wyatt v. Irrigation Co.,* 18 Colo. 298; *Insurance Co. v. Childs,* 25 Colo. 360.

Shares of stock are personal property, and transferable as such in the manner provided by the by-laws of the company.—1 Mills' Ann. Stats., sec. 480.

No transfer of stock shall be valid unless entered on the stock book of the company within sixty days from the date of the transfer, by an entry showing to and from whom conveyed.—1 Mills' Ann. Stats., sec. 508; *Conway v. Johns,* 14 Colo. 30; *Isbell v. Graybill,* 19 Colo. App. 508.

"Water rights belonging to land and stock in a ditch corporation are two essentially different kinds of property. * * * Water rights for irrigation are regarded as real property, and shares of stock in a corporation are personal property."—*First National Bank v. Hastings,* 7 Colo. App. 129-132.

Talcott did not offer to sell the shares of stock in The Park Reservoir Company.

Mastin exceeded his authority, as Talcott's agent, when he included such shares of stock in the option given by him to Carpenter.

No question of water rights is involved herein.

In no view which can be taken of Talcott's offer can it be said that he offered to sell stock in The Park Reservoir Company.

Petition for rehearing denied.

*Petition denied.*

THOMSON, P. J., not sitting.