[No. 4149.]

THE HENDRIE & BOLTHOFF MANUFACTURING CO.
v. COLLINS ET AL.

1. ATTACHMENT — CONSOLIDATION — INTERVENING CLAIMANT — PARTIES.

Where two attachments were levied upon the same property at

different times and a third party intervened claiming the property under a purchase subsequent to the first attachment, but prior to the second attachment, the subsequent attaching creditors not having been made parties plaintiff in the first attachment suit, cannot invoke the protection of the statute authorizing the consolidation of attachment suits and providing for the distribution of the attached property amongst the attaching creditors, to defeat the claim of the intervener.

2. GARNISHMENT—UNLAWFUL POSSESSION—EVIDENCE.

As between garnishment creditors and an intervening claimant of the garnished property, a telegram sent by the the garnishee whereby it secured the possession of the property from the garnishment creditors by agreeing to hold the property subject to their interest and to return it to them, was not admissible in evidence where the prior possession of the property by the garnishment creditors was unlawful.

3. GARNISHMENT — INTERVENER — EVIDENCE — DECLARATION OF GARNISHEE.

As between garnishment creditors and an intervening claimant of the garnished property, a declaration of the garnishee tending to show that it obtained possession of the property from the garnishment creditors by agreeing to hold the property for them and to return it to them was not admissible in evidence, since the declarations of the garnishee could not affect the rights of the intervener.

4. GARNISHMENT—PRINCIPAL AND AGENT—EVIDENCE.

As between garnishment creditors and an intervening claimant of the garnished property where the creditors had traversed the answer of garnishee, statements made by the garnishee tending to show that he obtained possession of the property from the garnishment creditors and held such property as their agent was not admissible as evidence, since the causing of the issuance and service of the garnishment process and the traverse of the garnishee's answer were acts entirely inconsistent with the claim that the garnishee held the property as their agent.

5. CORPORATIONS — EVIDENCE — RESOLUTION OF DIRECTORS — RECORDS.

While the record is the best evidence of the adoption of a resolution by the board of directors of a corporation, in the absence of such record the action of the board may be shown by the testimony of those who attended the meeting.

6. STATUTE OF FRAUDS—SALES—PERSONAL PROPERTY—CHANGE OF POSSESSION.

The requirement of our statute that a sale of personal property, as against creditors, must be accompanied by immediate delivery and followed by an actual and continued change of possession does not apply

where prior to the sale the vendor had placed the property in the possession of a third party as bailee. In such case it was a sufficient compliance with the statute where the vendor notified the bailee to hold the property for the vendee and the vendee accepted the property and notified the bailee to hold it for him.

7. APPELLATE PRACTICE—FINDINGS OF TRIAL COURT CONTRARY TO DIRECTIONS OF COURT OF APPEALS.

Where the findings of the trial court upon the question as to whether or not there had been a sale of the property in controversy was upon appeal reversed by the court of appeals and upon a second trial, without any additional evidence, the trial court refused to follow the direction of the court of appeals, but made the same findings as in the first trial, on appeal to the supreme court such finding of the trial court has no weight with the supreme court as a finding.

8. SALES—ATTACHMENT—EVIDENCE.

Where a mining company purchased from a manufacturing company certain machinery and the mining company becoming insolvent was unable to pay for the machinery and its directory authorized one of its directors to negotiate with the manufacturing company a re-sale of the machinery in payment of the purchase price, and pending such negotiations the machinery was placed in the possession of another mining company as bailee, and the failing mining company notified the bailee company to hold the machinery for the manufacturing company and the manufacturing company accepted the offer of the return of the machinery and notified the bailee company that it was the owner of the machinery, the re-sale of the property was a valid sale for a valuable consideration, and vested in the manufacturing company the title to the machinery as against subsequent attaching creditors of the insolvent mining company.

*Appeal from the District Court of Mineral County.*

The United Leasing Company, a corporation doing business in Mineral county, bought from the Hendrie & Bolthoff Manufacturing Company for use in one of its mines, a Knowles compound pump, of the value of about $7,500. Realizing its failing condition, the directors of the Leasing Company, in December, 1895, authorized Eben Smith, a member of the board, to arrange with the Manufacturing Com-

pany to take the pump in satisfaction of its debt. Pursuant to this direction, Eben Smith, representing the Leasing Company, and E. B. Hendrie, representing the Manufacturing Company, began negotiations. No agreement was reached until some time during the month of January, 1896. Pending these negotiations, certain mechanics' lien claimants took possession of the pump for the purpose of preventing its removal until they could obtain proper process. The Amethyst Mining Company borrowed the pump, but was not permitted to remove it until it agreed to hold it subject to the demands of the men who had taken it into their possession. The pump had not been used by the Leasing Company, but stood upon the premises of the Leasing Company unattached. When the Amethyst Company borrowed the pump, it was placed in one of the lower levels of the Amethyst property, and was in use at the time the plaintiffs below began suit by attachment against The United Leasing Company. E. J. Hatcher began suit by attachment against The United Leasing Company January 23, 1896. The plaintiffs began suit against the same company February 1, 1896. Garnishment summons was served on the Amethyst Company in the Hatcher suit on January 23, and in the suit of plaintiffs on February 1, 1896. The Amethyst Company, as garnishee, answered in each of the cases mentioned as follows:

"The Amethyst Mining Company has in its possession one Knowles compound pump, which it received from the defendant company, but which the Amethyst Mining Company is informed is the property of The Hendrie & Bolthoff Manufacturing Company of Denver." The answer was traversed in due time, and the Manufacturing Company was ordered to appear "and

show what title, if any, it had in and to the said pump referred to in the said answer of The Amethyst Mining Company, garnishee." In response to the order and summons, the Manufacturing Company filed its petition of intervention, claiming the property by virtue of the agreement mentioned with The United Leasing Company, and alleging that the property was turned over to the Amethyst Company on the 25th of January, 1896, and that ever since the 25th of January, 1896, the said property was held by the Amethyst Company for and on account of the intervenors.

To this petition, an answer was filed by the plaintiffs which put in issue the alleged agreement between the Manufacturing Company and the Leasing Company and the allegation that the Amethyst Company held the pump for the Manufacturing Company, and alleged that the Amethyst Company held the pump in question subject to the claim of plaintiffs, and that the alleged agreement between the Manufacturing Company and the Leasing Company was void because not followed by an immediate change of possession. The intervenor moved to quash the writ of garnishment, because the property, being capable of manual delivery, was not the subject of garnishment. The motion was overruled. The cause was tried by the court, and judgment rendered against the intervenor. An appeal was taken to the court of appeals; that court reversed the judgment, holding that the evidence showed a sale to the Manufacturing Company.

Upon the second trial the intervenor offered no additional evidence, and the evidence concerning the sale offered by the plaintiff, in addition to that offered at the first trial, does not contradict the evi-

dence of the intervenor. The evidence of the sale from the Leasing Company to the Manufacturing Company is mainly documentary, consisting of telegrams and letters passing to and from the representatives of the respective companies. Eben Smith called upon E. B. Hendrie and offered to return the pump in settlement of the debt. This was at first refused; after the pump had been taken by the Amethyst Company; January 25, 1895, the Manufacturing Company telegraphed the Amethyst Company as follows: "Please remember that you are holding that compound pump for us; it is our property." Prior to this time Smith had directed the manager of the Amethyst Company to hold the pump subject to the order of the Manufacturing Company. No record of the resolution authorizing Smith to return the pump to the Manufactturing Company was ever made by the directors of the Leasing Company.

The second trial resulted in a judgment for the plaintiffs and against the intervenor. From this judgment the intervenor appealed to the court of appeals, and the cause was transferred to this court.

Mr. R. D. THOMPSON, for appellant.

Mr. ALBERT L. MOSES, for appellees.

Mr. JUSTICE STEELE delivered the opinion of the court.

The intervenor assigns as error the rulings of the court in denying the motion to quash the garnishment summons; in overruling the objection to the introduction of testimony concerning the Hatcher suits in the United States court; in overruling the objection of the intervenor to the introduction of tes-

timony concerning the orders of court making distribution among the attaching creditors of the funds realized from the sale of the pump; and in dismissing the petition of the intervenor. We are not willing to pass upon the question raised by the first assignment of error, because it does not appear to have been fully presented, and although it might be a controlling question in this case, it is not necessary to determine it, and we feel that the question is of so great importance that we should await an exhaustive argument upon the subject before rendering an opinion. The court erred in allowing evidence concerning the distribution among the attaching creditors of the funds realized from the sale of the pump. The question to be decided in this case is, whether or not, prior to the attachment of the plaintiffs, The Hendrie & Bolthoff Company had taken possession of the pump under a contract with The United Leasing Company to accept it in satisfaction of its debt, and it is immaterial what became of funds in other suits. It is scarcely necessary to cite authorities to the proposition that a sale may be made of property in the possession of a sheriff, subject to any lien existing at the time of the sale. And if there was a valid sale of this pump prior to the time of the plaintiffs' attachment and subsequent to the time of the Hatcher attachment, it was subject to the lien of the Hatcher attachment only; and the statute (3 Mills Ann. Stat. § 2704d) which authorizes the consolidation of cases, and provides for the distribution of the property sequestered among the attaching creditors, does not prevent the sale of property after the first attachment, although such sale may have the effect of defeating subsequent attaching creditors.

The foregoing statement expresses the view of the

writer; the other members of the court do not desire to venture an opinion upon the subject, but do concur in the judgment of the court in other respects. They are of opinion that the plaintiffs, not having been made parties plaintiff in the Hatcher suit, cannot invoke the protection of the statute.

The court permitted the following telegram to be introduced over the objection of the intervenor: "January 15, 1896. To. I. N. May, Supt. Amethyst Mine, Creede: If there is any trouble about getting the pump, tell the men we only want to borrow it and will return it and guarantee to hold it subject to their interests. Don't try to take it by force." The attorney for certain of the creditors indorsed the telegram as follows: "In my opinion this guarantee of the Amethyst Mining Company, made by its managing director, is sufficient assurance for the men on the United properties. I advise that Mr. May be allowed to take this pump, giving his receipt therefor and turning over this telegram to Mr. Armstrong as evidence."

We think the court erred in overruling the objection to this evidence. The creditors had not legally taken possession of the property. They had not commenced suits to enforce their claims. It is true that complaints were being prepared, but no step at this time had been taken by the creditors for the purpose of taking possession of the property of The United Leasing Company, and the possession which the men had must be considered as unlawful. The miners themselves have all been paid in full, and the leader of the men is the person who resisted the taking of the pump. In no event can the telegram in question, or the declaration mentioned in the telegram, affect the rights of the Manufacturing Com-

pany, and if there is any claim to the property by the men because of this telegram, it is not against the intervenor. And, besides, subsequent to the delivery of the propery to the Amethyst Company, these creditors caused garnishment process to be issued and served, and traversed the answer of the garnishee,—actions entirely inconsistant with the claim that the Amethyst Company held the pump as their agent. In support of the ruling of the court, counsel for the plaintiffs (appellees here) insist that there was no resolution of the board of directors of the Leasing Company authorizing the transfer of the property to the Manufacturing Company. It is true that no record of the Company appears containing the resolution, but the directors of the company testified that such resolution was adopted, and that Mr. Eben Smith, one of the directors, was authorized to make the transfer of the pump to the Manufacturing Company. It is further testified that at the time of the organization of the company, Mr. Smith was authorized to transact all the business connected with the management of the company and that such authority was never revoked. While the best proof of the adoption of a resolution by a board of directors is the record of it, in the absence of a record it is entirely competent to prove the resolution by the persons who attended the meeting at which the resolution was passed. The rights of third parties cannot be injuriously affected by the failure of the directors of a corporation to properly record the resolutions of the board.

It is next urged by counsel that our statute of frauds requires that there shall be immediate delivery, followed by an actual and continued change of possession, and he cites several decisions of this court

in support of his contention. There is no doubt that when one undertakes to change the possession of personal property, the change must be open and notorious, so that the public may know that a change of possession has taken place, and that unless there has, as between the vendor and vendee, been such immediate and open and notorious change of possession, creditors of the vendor may attach the property or it may be taken on execution. But this does not apply where the property has been placed by the vendor in the possession of a third person, if the possession of the third person is open and notorious and exclusive. In this case, the Leasing Company delivered to the Amethyst Company the .pump in question, and it was taken by the Amethyst Company away from the property of the United Mines and placed below the surface in one of the Amethyst Mines. The possession of the Amethyst company was exclusive of the United Leasing company as between these two there was a perfect change of possession,. and all that was necessary to convey title from the owner of the property was for the owner to sell and the vendee to accept. *Manufacturing Co. v. Collins*, 13 Colo. App. 8. So that, assuming that the sale from the Leasing Company to the Manufacturing Company was in all respects a *bona fide* sale, we must hold that the possession of the Amethyst Company was that of The Hendrie & Bolthoff Manufacturing Company, and that there was such a change of possession as will satisfy our statute of frauds.

Upon the first trial of this cause the judge found that there was no sale of the property in controversy to the Manufacturing Company. The court of appeals reversed this judgment, holding that there was a sale, as shown by the evidence, and directing a

new trial. Upon the second trial the same evidence concerning the sale was offered and no additional evidence was offered by the intervenor; the only evidence concerning the sale, offered or introduced by the plaintiffs, was the testimony of W. H. Bryant concerning the authority of Eben Smith to make the contract. Plaintiffs did offer evidence, which has been referred to, concerning certain other attachments. The court declined to follow the judgment of the court of appeals, reciting in an opinion filed that other and additional evidence had been offered in the second trial, and that for that reason he did not feel called upon to follow the decision of the appellate court, and rendered a judgment in favor of the plaintiffs and against the intervenors, finding the facts and the law in favor of the plaintiffs. It is claimed by the appellees that we should not disturb the findings of fact of the lower court, and that for this reason the judgment should be affirmed. The finding of the district court can have no weight with us as a finding, for the reason that the direction of the court of appeals concerning the case was not followed by the district court; and under such circumstances, if any effect is to be given to a finding, it should be given to the finding of the appellate court. We are not disposed to base our opinion, however, upon the finding of the court of appeals, but have concluded to examine the testimony concerning the transaction between the Manufacturing Company and the Leasing Company, and from the testimony determine whether or not there was a sale. There is no conflict in the testimony; it is largely documentary and consists mainly of letters passing between Hendrie and Smith. From these letters we can arrive at no other conclusion than that on the 25th of

January, 1896, E. B. Hendrie, for the Manufacturing Company, accepted the proposition made by the Leasing Company, and directed The Amethyst Mining Company to hold the pump, which was in their possession, and claimed it at that time as their property. On this day The Hendrie & Bolthoff Company sent the telegram mentioned in the statement of facts, following by letter to the Amethyst Company in which they declare that the pump was theirs and that it had been re-sold to them by the United Leasing Company. There being no conflict at all in this testimony, and there being no circumstances disclosed which would warrant us in disregarding it, we must hold that the sale from the Leasing Company to The Hendrie & Bolthoff Company was a valid one, for a valuable consideration, and that it was duly authorized by the directors of the Leasing Company, and the property accepted by the Manufacturing Company; that by such acceptance the debt from the Leasing Company to the Manufacturing Company was extinguished, and that as between the plaintiffs and the intervenor, the intervenor has the superior right to the pump in controversy; that the plaintiffs acquired no title to the property in controversy by virtue of the attachment levied by Hatcher & Company prior to the said sale; and that the district court was without authority to order a distribution of the funds realized from the sale of the pump among the attaching creditors of the United Leasing Company.

For the reasons given, the judgment will be reversed with directions to the district court to enter judgment in favor of the intervenor.

*Reversed.*