[No. 5849.]

CARY ET AL. v. WILLIAMS ET AL.

Sale—Delivery—Statute of Frauds—Vendor of goods delivers them to a common carrier consigned to the vendee. They are accepted by the carrier, loaded into his vehicle, and the carrier's bill of lading mailed to the consignee. The delivery satisfies the statute of frauds.—(259)

*Appeal from Teller County Court*—Hon. THORNTON H. THOMAS, Judge.

Messrs. DORSEY & HODGES, and Mr. EDWARD I. THAYER, for appellant.

No appearance for appellees.

Mr. JUSTICE WHITE delivered the opinion of the court:

The appellants, as partners, under the firm name of Cary & Fielding, were engaged in selling mining machinery in the city of Denver. They contracted to sell to one DeGolyer a Cameron sinking pump for an agreed sum of $385.00 to be paid within thirty days from the date of delivery, upon condition that the title to the pump was to remain in the vendors until the agreed purchase price was fully paid. On the same day the pump was consigned and shipped to the superintendent or manager of a mine in Cripple Creek, then operated by DeGolyer under a lease. The pump was received by the vendee but not placed in the mine nor put to any use, except some of the valves and screws were taken from the pump and attached to an old one then in the mine. DeGolyer at the time was indebted to appellants on account of certain flues shipped to him prior to the making of the contract for the sale of the pump. Within thirty days after DeGolyer contracted for, and received, the pump, the manager of his mine, under instructions from DeGolyer hereinafter mentioned, transmitted to appellants a check for $300.00, the letter accompanying the check stating that the payment was made on the pump. Prior to the receipt of this check, the undisputed testimony shows, that DeGolyer and appellants had entered into an agreement by which DeGolyer was to return the pump and transmit to appellants $300.00; the money to be applied on the payment of the flues, and, together with the return of the pump, considered a discharge of the balance of DeGolyer's indebtedness to appellants.

DeGolyer, at the time of purchasing the pump,

(17)

instructed the manager of his mine to make payment therefor when certain moneys were collected. He then went east via Denver, at which time it appears the arrangement for the return of the pump to Cary & Fielding was made. Subsequently DeGolyer wrote his manager to pay Cary & Fielding $300.00, but gave no instructions as to the purpose of the payment. Thereafter, and subsequent to the remittance of the $300.00, as above stated, DeGolyer instructed his manager, by letter, to ship the pump to Cary & Fielding, but this was not done for the reason, as testified by the manager, that it was so cold that he could get no team to haul it to the railroad, and he had already sent in $300.00 as payment on the pump. Meanwhile DeGolyer returned from the east, and on May 10th verbally gave his manager peremptory instructions to at once ship the pump to Cary & Fielding. Thereupon the pump, including the parts which had been placed in the mine, was, on the 11th day of May, loaded aboard a car at Cripple Creek, and consigned for shipment to the appellants in Denver, and the bill of lading mailed to them. May 12th, while said property was still in possession of the railroad company and aboard its cars, and after the bill of lading had been delivered, a writ of attachment was issued in a suit brought by appellee, F. E. Williams, against the other appellees herein, and levied upon said property. Thereafter appellants intervened in that suit, claiming ownership of the attached property. A redelivery bond was given for the property upon which the levy was made, and the attachment was released. Upon trial of the case to a jury in the county court, the intervenors, after the evidence was all in, moved for a directed verdict in their favor, which was denied, and a verdict returned against them. Motions for a new trial, and in arrest of judgment, were interposed and overruled, to all of which

'rulings the intervenors duly excepted. Judgment was entered upon the verdict sustaining the attachment, and decreeing that the plaintiff in the original suit recover from the intervenors therein the pump and appliances upon which the levy was made, and that in default of the return of the property under the redelivery bond, that the intervenors pay into court the value of such property, or a sufficient amount to discharge the judgment and costs entered in the original suit against DeGolyer. The intervenors duly excepted to the judgment, and bring the cause here for review, on appeal.

Whether the original sale by Cary & Fielding to DeGolyer was conditional, or absolute, or by laches of the vendors became so, is wholly immaterial. The agreement subsequently entered into by the parties resulted, on May 11th, in vesting in the original vendors any interest DeGolyer had in the property.—*Hendrie & Bolthoff Co. v. Collins,* 29 Colo. 102.. The consideration for the relinquishment of DeGolyer's title, whether conditional or absolute, was' the extinguishment of the right of Cary & Fielding to demand of him the purchase price of the pump. The only question necessary to determine is, was the possession of the property effectually transferred, so as to defeat the subsequent levy of attachment at the instance of appellee Williams, in his suit against DeGolyer? Unless the change of possession was such as to afford visible notice to the community of a change in the ownership of the property, the transaction constituted a fraud in law under the statutes, and as such must be held void as to creditors.— *Bassinger v. Spangler,* 9 Colo. 175, 179; *Hendrie & Bolthoff Co. v. Collins, supra.*

We are, however, clearly of the opinion that there was such actual, visible and essential delivery and change of possession of the property as to meet

the requirements of the law. There was no conflict of evidence. The property was delivered by De-Golyer to the railroad company, accepted by the latter, placed aboard its cars for transit to Cary & Fielding, long prior to the levy. DeGolyer, in pursuance to the contract to resell, had surrendered his possession thereof; had severed his visible and apparent control over the property, and by consigning it, and transmitting the bill of lading to Cary & Fielding had constituted them the bailor, and the railroad company the bailee of the property.—24 Am. & Eng. Enc. of Law (2d ed.), sub. 5, p. 1071. The railroad company, having accepted the property under an agreement to ship and deliver to Cary & Fielding, became for the purpose mentioned, the agents of the latter.

In *Lake Shore and M. S. Ry. Co. v. Nat. Live Stock Bank of Chicago*, 178 Ill. 506, 515, 516, it is said:

"The effect of a consignment of goods in a bill of lading is to vest the property therein in the consignee. A delivery of goods to a common carrier consigned to a particular person, without specific directions different from ordinary usage, is constructively a delivery to the consignee. Where the vendee is the consignee, the delivery of goods to a common carrier without qualifications, consigned to that vendee, is in law a constructive delivery to the consignee from the time of shipment and the commencement of the carriage. 'It is well settled that delivery of goods to a common carrier * * * for conveyance to him (the purchaser), or to a place designated by him, constitutes an actual receipt by the purchaser. In such cases the carrier is in contemplation of law, the bailee of the person to whom—not by whom—the goods are sent, the latter, in employing the carrier, being considered as an agent of the former for that purpose.' —Benjamin on Sales (2d Am. ed.), par. 693, p. 648."

And again, on page 518:

"By the consignment and delivery of the goods to the defendant carrier to be conveyed to the consignee, without condition or qualification, the property in the goods became vested in the consignee, and could be affected, so far as the consignor was concerned, only by the right of stoppage *in transitu.*"

The possession was neither joint nor concurrent in DeGolyer and Cary & Fielding, but visibly and absolutely in the railroad company as agent of Cary & Fielding. No one could approach the property without at once ascertaining and knowing the change of possession and the actual ownership was undisputed. If the transaction was tainted with fraud at all, it was fraud in fact, and not fraud in law. No fraud in fact was charged or attempted to be proven.

The agreement of DeGolyer to pay Cary & Fielding $300.00 and return the pump was clearly executory, having reference entirely to the future. It did not cover transactions then consummated, but related to things *in future.* The agreement, therefore, did not constitute a present, absolute sale as to creditors of DeGolyer. If a creditor attached the property before delivery, his rights acquired by the levy would be superior to Cary & Fielding's, and a title acquired through such levy would undoubtedly be good. Under the contract, title to the pump did not pass to Cary & Fielding, nor did the liquidation of the indebtedness of DeGolyer to them occur until actual delivery. Since, however, and in pursuance to that contract, the property had passed out of the possession, and from under the control, of the seller, and into the possession and control of a common carrier, obligated to deliver it to the buyers, the sale was, then and there and thereby consummated, and the rights of the purchasers could not be injuriously

affected by a subsequent suit against the seller, and the levy of an attachment issued therein.

In *Hendrie & Bolthoff Co. v. Collins, supra,* the subject-matter was a pump and there had been a re-sale by the original vendee to the original vendor. A question was raised, as in the case at bar, between an attaching creditor and the intervening vendee as to who was the real owner. The court, referring to the statute, and the necessity of an immediate delivery of the property sold and notorious change of possession thereof, said: "But this does not apply where the property has been placed by the vendee in the possession of a third person, if the possession of a third person is open and notorious and exclusive."

Under the circumstances of this case we have not deemed it necessary, or proper, to discuss, approve or deny the doctrine apparently announced in *Autrey. v. Bowen,* 7 Col. App. 408, that when a chattel sold is capable of immediate delivery, and is retained by the vendor for a considerable period, but delivered to the vendee before levy of a creditor's writ, the sale is, by the retention, rendered void as to such creditor. We place our decision upon the doctrine announced in *Finding v. Hartman et al.,* 14 Colo. 596, 601.

Under the facts as disclosed by the record before us, there was nothing to litigate. The property clearly belonged to the appellants, and the attaching creditor secured no rights thereto or therein, and the court should have so instructed the jury. The judgment will, therefore, be reversed and the cause remanded.                                    *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.