Hurlbut, J.,
rendered the opinion of the court.
On August 22, 1912, Fay Morrison, plaintiff in error (plaintiff below), filed her complaint in replevin against Tim J. McCluer, defendant, and sued out, in aid, a writ of. replevin. Under the writ certain wagons, buggies, harness, etc., were taken from the possession of the sheriff by the coroner.
*265 The case was tried to a jury, which returned a verdict in favor of defendant, finding the value of the property to be $550.00.
It appears from the coinplaint that plaintiff’s cause of action is based upon a claim that she was entitled to the property under the terms of a certain chattel mortgage executed to her by one Frank Langley on the 23rd day of July, 1912, recorded the same day. The .property was levied upon by the sheriff under a writ of execution, based upon a judgment recovered by The Durango Mercantile Company against said Langley on July 25, 1912.
The answer admits the execution and recording of the mortgage in question, but pleads it was neither made in good faith, nor supported by valuable or good consideration ; alleging that Langley executed and delivered the same for the purpose of cheating and defrauding his creditors; that plaintiff conspired with him to do so, and obtained the mortgage for the purpose of assisting him in such fraudulent design; and that The Durango Mercantile Company is entitled to the possession of the chattels replevined, by virtue of a chattel mortgage executed April 12, 1912, by said Langley to it, duly recorded that day, and possession taken thereunder, as well as by virtue of the levy aforesaid. Plaintiff contends that said mortgage was void, as no grantee was named therein, and that possession was not taken until after her chattel mortgage was recorded.
One of the controlling questions raised by this record is: Was sufficient possession taken by the mercantile company of the property described in the mortgage of April 12th, in the latter part of June or first of July, to warrant it in holding the chattels against other creditors of Langley (mortgagor), and was it such a taking as would not militate against our statute of frauds and the law relating to chattel mortgages? ,
Defendant’s witness Couch testified in part as follows:
*266 “A. I got the mortgage (April 12th) from the attorney of the mercantile company, with instructoins to foreclose it. I went to A1 Stevenson at the San Juan barn, and told him what I had, and pointed out to. him what I wanted to foreclose on, and he showed me what belonged to him and what belonged to Langley. Then I appointed him custodian to take care of the stuff. I turned it over to him.
Q. Well did he, or not, agree to turn the stuff over to you and hold it for you?
A. He did.”
It appears from the record that Stevenson was in possession of the property at the San Juan barn under contract of bailment with Langley, by the terms of which Stevenson was' to use the same for profit, dividing such profits with Langley.
It is urged by plaintiff that, as against Langley’s other creditors, the possession of the chattels taken by Couch from Stevenson, as above shown, was insufficient to transfer the possession thereof from Langley to. the mercantile company. This contention is not tenable under the following authorities, to-wit: Weiland v. Potter, 8 Colo. App. 79, 44 Pac. 769; Jones v. Mackenzie Bros. W. P. & P. Co., 19 Colo. App. 121, 73 Pac. 847; Hendrie & Bolthoff Mfg. Co. v. Collins, 13 Colo. App. 8, 8 Pac. 815; Hendrie & Bolthoff Mfg. Co. v. Collins, 29 Colo. 102, 67 Pac. 164. It was held in the cases just cited that our statute of frauds, requiring a sale of personal property as against creditors to be accompanied by immediate delivery and followed by actual and continued change of possession, does not apply where, prior to the sale, the vendor had placed the property in the possession of a third party as bailee. If the bailee is informed of the sale and agrees to hold the property for the purchaser, possession is thereby delivered, and the sale is not fraudulent in law as to the creditors of the vendor. Applying the facts of this case to the law as. stated, it is clear that the acts and doings of Couch, the mercantile company's *267 agent, in taking possession o.f the property from Stevenson at the San Juan barn, were not affected by the statute of frauds. Couch informed Stevenson that he had the chattel mortgage from Langley to his principal, and came for the purpose of foreclosing the same for such principal. Stevenson was thus informed that Langley had conveyed the property to the mercantile company. He made no objection to recognizing the sale, and thereupon agreed that from that time on to hold hold the chattels as the custodian of the mercantile company, and to turn them over to the company at any time. Plaintiff, however, suggests that at the time Couch took possession, the debt secured by the mortgage was not due, and therefore Langley’s bailee had no right to surrender possession of the property to the mortgagee company, the mortgage providing that • until maturity of the debt the mortgagor was entitled to retain possession of the chattels. A sufficient answer to this contention is that at the time the mortgage debt matured, to-wit, July 12th, the mortgagee company was in the actual possession of the property through its custodian, Stevenson, and so retained the possession up to the time the Morrison mortgage was given. Had the Morrison mortgage been executed and recorded between the time Couch took possession, and the maturity of the mortgage debt, another question would be presented, upon which we express no opinion. We hold that, although the defendant’s written instrument was inoperative as a chattel mortgage, under Herr v. Denver M. & M. Co., 13 Colo. 406, 22 Pac. 770, 6 L. R. A. 641, yet the transaction between Langley and the mercantile company, of which the instrument was a part, shown by the evidence to have been intended by both parties as a mortgage, when coupled with the complete delivery to, and taking of possession by, the mortgagee, was sufficient as a common law chattel mortgage, as against the junior lien of plaintiff. We are of the opinion that the mortgagee company had a lawful right to retain possession of the mort *268 gaged chattels located at the San Juan barn, and to subject the same, by sale, to the payment pro tanto of the mortgage indebtedness, and the judgment to that extent must be affirmed.
As to. the chattels located at Ignacio, a most careful reading of the record fails to disclose any evidence showing that possession thereof was ever taken at any time under the mortgage of April 12th by the mercantile company. On the contrary, the record strongly tends to show that no such possession was taken. Some five or six days after the levy was made, under the judgment mentioned, on the property at the San Juan barn, Hopkins was sent by the sheriff to Ignacio to bring the chattels from that place to Durango. When he went there he had an order from the sheriff on Langley to deliver the chattels to Hopkins, which order he delivered to Langley, who thereupon, without any objection, turned the property over to Hopkins. The latter found the property in Cundiff’s livery stable at Ignacio, but testifies that he obtained it from Langley. The levy, not being made thereon until after the ¿xecution and recording of the Morrison mortgage, could no.t affect plaintiff’s rights as mortgagee, unless the record discloses sufficient evidence or circumstances warranting a verdict that the mortgage was obtained or executed with a fraudulent intent on the part of Langley, to hinder, delay or defraud, his other creditors, coupled with Morrison’s participation therein, or knowledge thereof. This is the only question left for determination.
Defendant’s answer clearly charged Langley with having fraudulently executed the Morrison mortgage, with the intent to defraud his creditors. It is also charged that plaintiff Morrison, prior to the execution of that mortgage, had knowledge of such fraudulent act and intent on the part of Langley, and participated therein. The burden of proof was upon the defendant to establish these charges. We find no evidence showing that plaintiff participated in, *269 or possessed knowledge of, any fraudulent intent on behalf of Langley in executing the mortgage, nor any evidence evincing on her part a disposition to assist Langley in any such purpose. However culpable Langley may have been-, or whatever determination may have existed in his mind to defraud his creditors in the giving of that mortgage, it could not affect the rights of plaintiff Morrison thereunder, unless it be shown by a fair preponderance of the evidence that she participated in his fraudulent acts in that behalf or had knowledge thereof. We have read with care the depositions of Langley, Cooper, and the plaintiff, and find nothing therein which can be fairly said to establish the fraud charged -aginst plaintiff, but much testimony that directly and circumstantially denies every element of the fraud. We are not bound by the findings of the jury as to any matters contained in the depositions, but are at liberty to place our own interpretation upon the testimony therein given. Rittmaster v. Brisbane, 19 Colo. 371, 35 Pac. 736; Jackson et ux v. Allen, 4 Colo. 263: Stuart & Co. v. Asher, 15 Colo. App. 403, 62 Pac. 1051; Colorado D. G. Co. v. Dunn Co., 18 Colo. App. 409, 71 Pac. 887; Talcott v. Mastin, 20 Colo. App. 488, 79 Pac. 973. In Lathrop v. Tracy, 24 Colo. 382, 51 Pac. 486, 65 Am. St. Rep. 229, it was held that where the evidence given upon issues of fact is partly by depositions and partly by that submitted in open court, this fact does not abrogate, but only pro tanto affects the rule that the findings of the trial court upon conflicting evidence should not be disturbed. The evidence aliunde the depositions falls short of supporting the charges of fraud made aginst plaintiff.
If we measure the evidence contained in this record by the well recognized rule, that fraud must be established against the party charged by clear and convincing evidence, and ■ be of such a nature as to impel the mind of a reasonable man to a conviction of the truth thereof, we think it insufficient to sustain the charge. We think the testimony *270 of plaintiff herself was not as clear, direct and outspoken as it might have been. It fairly germinates a doubt as to whether or not the consideration claimed by her to have been given to Langley for the mortgage was as much as she claimed; at the same time we are satisfied that the evidence, considered as a whole, establishes a substantial consideration paid by her for the mortgage. We will make no further comment upon this phase of the case, more than to say that another trial might obviate this criticism.
The judgment below will be affirmed as to such chattels described in the mortgage of April 12th as were located at the San Juan barn at the time of its execution, with instructions to the lower court to take testimony as to the value of such chattels; but as to the chattels therein described and located at Ignacio, the judgment will be reversed, and the case remanded for new trial, each party paying its own costs.

Judgment reversed, with instructions.