WEBER ET AL., PLAINTIFFS IN ERROR, v. BULLOCK, DEFENDANT IN ERROR.

1. CORPORATION STOCK—TRANSFER.

There must be at least a substantial compliance with the provisions of the statute (Gen. Stats., sec. 269) requiring the transfer of stock to be entered upon the books of the company, in order to protect the property against future assignments or levies.

2. SAME.

Notwithstanding a compliance with the requirements of the statute is essential to a transfer of the legal title of the stock, courts of equity will protect such title or equitable right as the assignee of the certificate may have, when the question lies between him and an attaching creditor of his assignor as to who has the better title, when it appears that the assignment was prior to the attachment, made in good faith and upon a valuable consideration, and where the assignee had done all in his power to comply with the requirements of the statute, and was prevented from obtaining such transfer as the law requires by the fault of others.

*Error to the District Court of Arapahoe County.*

THIS suit was instituted on the 2d day of August, 1888, in the district court of Arapahoe county, to enjoin the plaintiff in error A. H. Weber, as sheriff, from selling six thousand

shares of the capital stock of the Marrs Consolidated Mining Company, theretofore attached by him as the property of George W. Middleton, and about to be sold under executions issued on judgments recovered by his coplaintiffs in error against the firm of Marrs, Middleton & Hunter. These actions against the firm were commenced in the year 1888, and the attachments and executions were levied on the stock in question in the month of May, 1888.

At the time they were levied the stock stood in the name of George W. Middleton, on the books of the Marrs Consolidated Mining Company, and its successor, the Swansea Mining Company. The defendant in error claims ownership of the stock by virtue of an assignment of the certificate to him in trust, for certain beneficiaries, prior to the levy of said attachments and writs.

The court below rendered judgment in favor of defendant in error. To review this judgment this writ of error is prosecuted. The facts as disclosed by the record are substantially as follows:

On the first day of November, 1881, The Marrs Consolidated Mining Company, a corporation duly organized under the laws of this state, issued to George W. Middleton certificate numbered 16 for six thousand shares of its capital stock. During that fall Middleton sold certain other shares of the capital stock of this company to parties residing in Kentucky, with a guaranty that the company would, after January 1, 1882, pay to the holders of the stock so sold a dividend equal to three per cent per month of the purchase price thereof, for the period of twelve months, and that the shares should be redeemed at the end of that period, if the holders desired, at the price paid. To secure the performance of this guaranty, Middleton and others executed a bond, and as additional security he placed in the hands of R. S. Bullock, in trust, this certificate No. 16 for six thousand shares of stock. On the 9th day of March, 1886, written agreements were entered into between the Kentucky stockholders and George W. Middleton, wherein it was provided that in consideration

of the release of said guaranty and the discharge of all obli-
gation or liability thereon, the full, complete and unincum-
bered title to the six thousand shares of stock so held in
trust by said Bullock were to be transferred to him upon the
books of the company, for the purpose of distribution among
the several parties interested.  At the time said agreements
were made the certificate of stock, which had been deposited
in the German National Bank of Denver, had been misplaced
and could not then be found, and was not found until several
months thereafter.  Before the certificate was found these
written agreements were presented to the company and a
transfer of the stock upon its books demanded.  Other and
repeated demands were made upon the company, by repre-
sentatives of Bullock, for a transfer of the stock upon the
books of the company to R. S. Bullock pursuant to these
agreements, during the years 1886 and 1887 and the fore
part of 1888, both before and after the certificate of stock
was found.  And after the certificate was found, and in
April, 1887, the same was presented to the officers of the
company by Mr. Golding, a representative of Mr. Bullock,
and the issuance of a new certificate demanded in lieu there-
of.  And, again, on the 31st day of March, 1888, the certifi-
cate was presented to the company by Mr. Pence, as attorney
for Bullock, with an offer to surrender the same and a de-
mand for the issuance of a new certificate to Bullock as
Middleton's assignee.  All of these demands were refused
by the company by reason of some discrepancy appearing
upon their books in regard to the issue of certificate No. 16.
In the month of May, 1888, it was agreed by the officers of
the company, that if the company was indemnified by a prop-
er bond, they would make the transfer.  While such bond
was being procured in Kentucky these writs were levied.
The defendant in error offered to show, by the sheriff him-
self, and also by Pence, that at the time the writs were
issued and before the same were levied, the sheriff was noti-
fied that Mr. Bullock, as trustee, claimed to be the owner of
said stock.

Messrs. SULLIVAN & MAY, Messrs. COE & FREEMAN and Mr. T. J. O'DONNELL, for plaintiffs in error.

Messrs. PENCE & PENCE and Mr. JAMES S. McGINNIS, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The foregoing statement sufficiently discloses the material facts established by the evidence that are pertinent to the inquiry before us, or essential to the determination of the rights of the respective parties to the stock in controversy. Plaintiffs in error rely upon two grounds for a reversal of the judgment of the court below. First, that, irrespective of our statute relative to the transfer of stock by corporations, the plaintiff below was never vested with any title to the stock in question. Second, under section 269 of the General Statutes, 1883, and the pleadings and evidence, the defendant in error cannot maintain this action against plaintiffs in error.

It is contended, in support of the first proposition, that the defendant in error was never vested with the title to the stock in question, even as trustee, for the reason that the terms of the agreements, in pursuance of which it was transferred, were never complied with, in this, that it is therein expressly provided that, before the release and discharge of Middleton and his co-obligors from the guaranty given by them, there should be transferred to Bullock, upon the books of the company, a full, complete and perfect unincumbered title to the stock; and that, as this condition had never been complied with, the title did not pass to him under these assignments.

We think this position is untenable. The certificate was placed in Bullock's possession in 1881, as collateral security; and on March 9, 1886, under the agreements referred to, the absolute title to the stock, so far as Middleton could convey it, was transferred to him for the purpose of its distribution

among the respective beneficiaries. Bullock assumed the ownership of the stock as trustee. He not only accepted the certificate, but through his agents and attorneys repeatedly demanded a transfer of the stock upon the books of the company, and is here, in this action, asserting his ownership in behalf of the beneficiaries.

Whether, by reason of the proviso thus relied on by plaintiff in error, the failure to transfer on the books of the company a clear legal title leaves Middleton and his co-obligors still liable on the guaranty, is immaterial. It certainly does not affect the ownership of Bullock to the stock acquired and vested in him by the transfer of the certificate. The parties to the agreement and those whose rights, if any, are affected thereby, are not denying the validity of the transfer of the stock to Bullock ; and it certainly does not lie in the mouths of plaintiffs in error to raise this objection. So far as they are concerned, the facts in evidence show that Bullock, for the purposes of the trust, is vested with title to this stock, and that, as such trustee, he is entitled to avail himself of any proper remedy to protect such ownership.

It is further insisted that, notwithstanding the transfer to Bullock may be held valid and effective in transferring such title as Middleton had in the stock, yet by section 269 of the General Statutes, 1883, the defendant in error is precluded from asserting such or any title to the stock in question as against the plaintiffs in error. That the fact appearing that no transfer of the stock upon the books of the company was made within sixty days from the date of the assignment of the stock to him, is sufficient to defeat the acquisition of any title acquired thereby, and that no exercise of diligence on his part will avail him, or excuse the want of such actual transfer.

In support of this interpretation of the statute the case of *Conway v. John*, 14 Colo. 30, is relied on. In that case it was held, that by this statutory provision a different mode for the transfer of the stock of a corporation was established than existed at common law ; and that, under the facts of

that case, the attempt to transfer by indorsement and delivery of the certificate without a transfer of the stock on the books of the company was insufficient to vest the title in the assignee, as against the vendor's creditors, and that the stock remained subject to attachment at their suit. The facts in that case disclosed a transaction unaffected by any equitable considerations, and called simply for the interpretation of the statute as applied to those facts, which were as follows : A certificate of stock was assigned to Conway, by one Ireland, on November 22, 1881. No transfer of the stock was made upon the books of the company, and it still stood in the name of the assignor on the books of the company on April 19, 1882, when it was attached as his property. On May 22, 1882, it was sold on judgment rendered in that action, and purchased by John without notice that Conway had any claim thereto ; and not until November, 1883, did he learn that the judgment debtor had assigned the stock to Conway. Upon these facts the court well held that, " there must be at least a substantial compliance with the requirement in order to protect the property against future assignments or levies."

No question of diligence on the part of the assignee of the stock to procure a transfer was involved, and it was not claimed that the purchaser at sheriff's sale had any notice of Conway's rights. In *Supply Ditch Company v. Elliott et al.,* 10 Colo. 327, it is held that,

" Certificates of stock are assignable, and pass from hand to hand by indorsement, as bills of exchange and promissory notes pass, and holders of such certificates are *prima facie* presumed to be *bona fide* owners thereof."

And, while in *Conway v. John* it is held that such title is not sufficient to protect the stock so transferred from attachment at the suit of the creditors of assignor, or to defeat the acquisition of title by an innocent purchaser, it is not to be taken as establishing the doctrine that the assignee of stock, having used diligence to comply with the requirements of the law, and having done all in his power to procure a trans-

fer upon the books of the company, shall be deprived of his property by the mere failure or neglect of the company to make such transfer.

Shares of stock are liable to attachment and are the subjects of sale, delivery of possession being essential to a complete transfer of title, as in the sale of other personal property. The evident intent and purpose of the statute it to guard against the fraudulent or secret disposition of stock by making it the duty of the holders thereof to procure a transfer upon the books of the company, and thus furnish record evidence of their title and possession; and a vendee or assignee of stock, who ignores or willfully disregards the requirements of the statute by neglecting to have the same transferred upon the books of the company, may suffer the penalty of having the stock subjected to the payment of his vendor's debts. But, upon the same principle that the retention of the possession of chattels by a vendor may be explained by showing that a delivery was impossible, thereby rebutting any inference of fraud, the failure to have the transfer of the stock made upon the books of the company may be shown to be without fault on the vendee's part, and that such failure occurred notwithstanding his honest but ineffectual effort to comply with the requirement of the statute. Notwithstanding a compliance with the requirement of the statute is essential to a transfer of the legal title to the stock, as held in the *Conway-John Case, non constat,* that courts of equity will not protect such title or equitable right as the assignee of the certificate may have when the question lies between such assignee and the attaching creditor of his assignor as to which has the better title, when it appears that the assignment is prior in time to the attachment and made in good faith and upon a valuable consideration, and where the assignee has done all in his power to comply with the requirements of the statute and is prevented from obtaining such transfer as the law requires by the fault of others, and not from any neglect on his part.

In *Colt v Ives*, 31 Conn. 25, a case involving the construc-

tion of a statute like ours upon a similar state of facts, in distinguishing that case from those wherein the supreme court of Connecticut had laid down the doctrine followed in *Conway v. John*, Hinman, C. J., speaking for the court, said:

"If a good reason is shown * * * for the failure to procure a transfer of stock on the books of a corporation, as in this case, which would have been sufficient to excuse the taking possession of personal chattels sold, then, upon the same principles upon which the taking possession in the latter case would be excused, it would seem that the act which is ordinarily required in order to perfect an assignment of a chose in action or of stock in a corporation ought in equity certainly to be also excused."

And again,

"It is true there will sometimes be cases where a mere technical title will prevail; but it is desirable, so far as practicable, that the substantial and equitable ownership should be sustained rather than a technical title; and so far as the rule was intended to be punitive in its application, in order to compel a conformity to the policy of the law, there is no reason why a party who has done all that he possibly could should be made to suffer any penalty."

The case at bar illustrates the obvious injustice of a contrary rule. The assignment of the stock to defendant in error was long prior to the attachment, was made in good faith and upon a valuable and adequate consideration. The defendant in error, diligent in the charge of his duty as trustee, demanded, within a few days after the assignment of the certificate to him, a transfer of the stock upon the books of the company, and repeatedly and persistently, through his agents and attorneys, sought to comply with the requirement of the statute.

We think that under the facts of this case the defendant in error has shown good reason for failure to procure a transfer of the stock in question to be made upon the books of the company, and has done all he could to conform to the policy of the law, and that it would not only be inequitable, but a

perversion of the true intent and meaning of the statute, to subject him to the loss of his property solely for the fault of the officers of the company.   We cannot agree with counsel for plaintiffs in error that an action against the company to recover the statutory penalty and damages is his only remedy, but are of the opinion that he may also maintain this action, and that he has clearly shown his right to the relief demanded. The judgment of the court below is accordingly affirmed.

*Affirmed.*