No. 10,989.

WIMER AND CO., ET AL. v. DOWNS, INC.

Decided June 1, 1925.

Action for injunction.   Decree for plaintiff.

*Reversed.*

1. PLEADING—*Demurrer*—*Parties.*   While the complaint was not vulnerable to demurrer on the ground of misjoinder of parties, upon the incoming of cross-complaint showing a defect in this regard, the necessary parties should have been brought in.

2. TRUST COMPANIES—*Common-Law*—*Managers*—*Powers.*   The managers of a common-law trust have complete control of the organization and its property, but in the absence of express authority to do so, cannot interfere with the ownership or transfer of unit certificates.

3.     *Common-Law*—*Units*—*Attachment.*   Where certificate of units of a common-law trust presented for transfer and receipted for March 27, were attached and garnishment served April 12, transferees were amply protected.

4.  EQUITY—*Breach of Faith.* Where plaintiff agreed with defendants that it would not engage in the brokerage business, a violation of the agreement and use of information obtained through its confidential relations with defendants, in trading in unit certificates, precluded it from equitable relief in obtaining a transfer of certificates on the books of the company.

5.  *Pleading—Cross-Complaint.* In an action for injunction to compel the transfer of certificates in a common-law trust company, allegations of cross complaints showing a breach of faith on the part of plaintiff and evidence in support thereof were improperly excluded from consideration by the trial court.

6.  APPEAL AND ERROR—*Disregarding Pleadings—Exceptions.* The contention that defendants made no objection and saved no exception to a ruling of the trial court in excluding their cross-complaints from consideration on the trial, overruled.

7.  INJUNCTION—*Transfer of Certificates.* Brokers conducting a lawful business in trading in certificates of units in a common-law trust company, are entitled to a mandatory injunction compelling the managers to perform their duties as trustees in the transfer of certificates.

*Error to the District Court of the City and County of Denver, Hon. Samuel W. Johnson, Judge.*

Mr. WILLIAM W. GARWOOD, Mr. OMAR E. GARWOOD, Mr. J. W. KELLEY, Mr. JEAN KELLEY, for plaintiffs in error.

Mr. CHARLES R. ENOS, Messrs. DANA, BLOUNT & SILVERSTEIN, for defendant in error.

*Department One.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error were defendants and defendant in error was plaintiff in the trial court and we hereinafter so refer to them.

Plaintiff was a stock brokerage corporation, owned and controlled by R. E. Plumbe, president, and A. Downs, treasurer. Defendant, The Silver Cycle Mining Company

(hereinafter referred to as the Mining Co.), was a so-called "common-law trust" engaged in mining, of which defendant J. C. Murphy was secretary, defendant C. W. Wimer treasurer and office manager, and of which these two men, together with J. G. Connor and Frank S. Winser, were the "managers". Defendant Wimer & Co. was a stock brokerage corporation of which Nye A. Wimer (brother of C. W. Wimer) was president and majority stockholder, and said company was the fiscal agent of the Mining Co. Defendant Nye A. Wimer was one of the organizers of the Mining Co. and at that time owned half its stock, and, as the head of Wimer & Co., he was manager of the stock selling activities of the Mining Co.

Plaintiff brought this action for a mandatory injunction to compel the Mining Co. to make certain transfers of stock on its books and to enjoin defendants from interfering with plaintiff's brokerage business by refusing in future to make such transfers, or by circulating false reports concerning plaintiff's business. Decree was entered as prayed, and to review that judgment defendants prosecute this writ.

The "organization articles" of the Mining Co. were filed for record with the county clerk and recorder in Denver November 21, 1921. They describe the business of the company and provide that the interest of its members shall be evidenced by certificates of ownership of units of the par value of one cent each, of which units there shall be 100,000,000 "transferable only on the books of the company by the registered owner in person or by a duly authorized attorney upon surrender of the certificate properly endorsed."

They further provide for five managers of the business who "shall have sole supervision of the affairs of the company," said managers are authorized to acquire and dispose of property, contract and secure debts, etc., but "have no power to bind or obligate the members or holders of units personally." They may close out the business when they see fit, continue it indefinitely, or convert the organi-

zation into a corporation. They may increase or decrease the number of units, or the par value thereof, but in so doing may not interfere with the proportionate ownership of the members whose interest in the property and income is estimated in the proportion which the number of units owned by each bears to the total number of units issued and outstanding. The managers are empowered to select their own successors or leave vacancies unfilled. Finally the articles provide: "The terms and conditions hereof shall not be altered, amended or abrogated during the existence of the company and until its termination as herein provided * * * it being the intention hereby to create what is known as a common law trust for the purpose of carrying on a business by the use of trustees, upon whose powers and authority no limit is set or attempted to be set, and upon whose acts no reservation is made, the scope of their authority being without limit. * * *."

The complaint alleged that Wimer & Co. was in absolute control of its president, and both were insolvent; that there were several hundred owners of units in the Mining Co. and that such ownership was constantly changing; that the Mining Co. was absolutely controlled by Wimer & Co.; that plaintiff had dealt extensively in the units of the Mining Co. and as a part of its brokerage business had bought and sold units for its customers; that it had sent to the Mining Co. twelve separate certificates of ownership for a total of 262,000 of said units, all properly endorsed by the original owners, and by such endorsement appointing the holder as attorney to surrender and transfer, and had requested the transfer thereof to the purchasers; that 3000 of said units were requested transferred to plaintiff and the remainder to about sixty different purchasers; that the Mining Co. refused to make the transfers or return the certificates; that defendants had entered into a conspiracy to ruin plaintiff's business and that said refusal to transfer or return said certificates, and the publication and circulation of certain articles and rumors detrimental to plain-

tiff's business, as in the complaint charged, were all a part of said conspiracy.

Each defendant demurred to the complaint for want of facts, defect and misjoinder of parties defendant, misjoinder of causes of action, and ambiguity. Each demurrer was overruled.

Wimer & Co. answered by admissions and denials, and by a cross complaint charging that Plumbe had, prior to the organization of plaintiff, been an employe of the Mining Co. and Downs an employe of Wimer & Co. under contracts not to engage in a competing business within a given time after the termination of that employment; that said contracts had been violated by Plumbe and Downs who, by reason of their former confidential relations had obtained a list of 2200 purchasers of units in the Mining Co., and the details of their purchases, and were basing their operations in said units upon such violation and unless restrained would continue to do so. The prayer was that Plumbe and Downs be made parties and enjoined from such violation; that a receiver for plaintiff be appointed by the court with power to segregate its transactions in units of the Mining Co., deliver to the purchasers thereof from plaintiff the units purchased, and cause the proceeds of said sales to be paid to Wimer & Co. and the Mining Co., and for judgment against plaintiff and Plumbe and Downs for all sums already received by them from the sale of said units to persons whose names had been obtained from said list, and for an injunction against plaintiff and Plumbe and Downs restraining them from further dealing in the units of the Mining Co., with the persons whose names appeared in said list, during the period covered by the alleged contracts of Plumbe and Downs.

The Mining Co. filed a similar answer, alleging in addition that the certificates delivered to it had been stolen from its office, and furthermore that in a suit brought by Wimer & Co. against plaintiff in the district court of the city and county of Denver the Mining Co. had been garnisheed and retained the certificates in question under that

writ. It further set out by way of cross complaint many of the facts alleged in the cross complaint of Wimer & Co., including the confidential employment, contract and misconduct of Plumbe and Downs; that the latter had undersold certificates of the Mining Co. and thereby made it impossible for the Mining Co. to further finance its business by the sale of additional units; that the plaintiff and Plumbe and Downs were insolvent and the Mining Co. had no plain, speedy and adequate remedy at law; and prayed as did Wimer & Co.

Wimer & Co. and the Mining Co. offered to try the entire case upon its merits at the time set for hearing the application for temporary injunction, and the individual defendants appearing it was consented that they had filed general denials. Plaintiff objected to a final trial on the merits of the issues tendered by the cross complaints. The court ordered that the cross complaints should be considered, as far as applicable, as answers to the complaint and that final hearing be had upon the merits of the issues tendered by the complaint and answers; it being further agreed that said answers and cross complaints should be considered as denied by the plaintiff. The court having heard the evidence entered a decree commanding the Mining Co. to make the requested transfer and deliver the new certificates to plaintiff, enjoining the defendants from failing and refusing in the future to make similar transfers upon proper demand and from delaying the same for a longer time than was reasonably necessary to enable it to verify the names and addresses of the transferees; and restraining the defendants from discriminating against plaintiffs in such transactions. The court further held that the cross complaints were improper in said action, and no affirmative relief could be granted under them, and excluded evidence in support of their allegations.

Defendants group their ten assignments under five questions of law, as follows: (1) "Was the contract or trust agreement between the members and the company (the Mining Co.) binding on defendants in error?" Defend-

ants answer, "Yes," and contend that said trust agreement
gave the managers the right to say who could become own-
ers of the units, hence the right to refuse the requested
transfer. (2) "When shares or certificates were attached
should the court compel the transfer before disposing of
the attachment proceedings?" Defendants answer, "Yes",
and say hence they should have retained the certificates
under the writ. (3) "Should the lower court have heard
the cross complaints as part of the case?" Defendants an-
swer, "Yes", and say they should have been granted the
relief thereby sought, which would have necessitated de-
nial of the mandatory injunction prayed by plaintiffs.
(4) "Are the terms of the injunctive decree responsive to
the complaint?" Defendants answer, "No", and assert
that plaintiff was given an injunction more sweeping than
its pleadings justified or its prayer demanded. (5) "Does
the fact that plaintiff's business is being injured give it ad-
ditional rights to have certificates transferred?" Defend-
ants answer, "No", and insist that plaintiff's rights are no
greater than would be those of an individual not engaged in
the brokerage business and seeking a transfer of certifi-
cates purchased by him.

The complaint was not vulnerable to the demurrers as
filed and they were properly overruled. However, upon the
incoming of the cross complaints a defect of parties did
appear and for reasons hereinafter given Plumbe and
Downs should thereupon have been brought in.

1. Certainly the trust agreement was binding on all
purchasers of units of the Mining Co. But in our opinion
that agreement gave the managers no right to control the
sale of such units, or power to refuse their transfer. The
managers had complete control of the organization and its
property, and power to do everything necessary to effectu-
ate that control. The ownership of units gave the holder
no voice in that management and their transfer could not
affect it in any way. Hence the ownership or transfer of
units was no concern of the managers and could not be in-
terfered with by them in the absence of express authority

to do so. We find no language in the trust agreement capable of being construed into such a grant of authority. Fletcher, Cyc. Corp. Vol. 9, sec. 6087, and cases there cited.

2. There may be circumstances under which the order for transfer in such a case should await the determination of attachment proceedings, but here the court had before it all the parties interested, and on trial all the issues involved, and should have proceeded to a determination thereof, if necessary to that end consolidating the two cases. Moreover, the Mining Co. had receipted for the shares in question March 27. The attachment suit was not begun until April 2, and the garnishment was not served until April 12. Under such circumstances the transferees are amply protected. 14 C. J. 755, 756, 757; *Weber, et al. v. Bullock,* 19 Colo. 214, 220, 35 Pac. 183.

3. If the allegations of the cross complaints as to the confidential employment of Plumbe and Downs, their contracts not to engage in business, the violation thereof, and their use to that end of confidential information secured through their former employment were true, neither they nor plaintiff could obtain any relief herein tending to aid them in a business based upon their breach of faith. Their interest in the transfer of the certificates of their customers was in no sense personal but an interest pertaining to their business as brokers. The owners of the certificates could have enforced their transfer, but plaintiff and Plumbe and Downs could not if the allegations of the cross complaint were true. Neither could they enforce the transfer of such of their own certificates, if any, as represented units obtained by them through such breach of faith. Hence the cross complaints were properly a part of the case. Section 174, Civil Code R. S. 1908, p. 107; section 175, C. L. 1921, p. 136; *Beal v. Chase,* 31 Mich. 490; *Vulcan Detinning Co. v. Am. Can Co., et al.,* 72 N. J. Eq. 387, 67 Atl. 339, 12 L. R. A. (N. S.) 102.

Counsel for plaintiff insists that defendants made no objection and saved no exception to the court's ruling that the trial on the merits would be confined to the main case,

excluding the cross complaints, and can not now raise the question. This, however, occurred at the opening of the trial and the cross complaints were not then disposed of either by demurrer or motion. In fact the court's ruling was exceedingly indefinite and cannot be considered as more than a suggestion as to what it would be when the time to make it arrived. It was based, as was the later ruling, on the ground that the cross complaints were improper pleading, hence plaintiff could not be prejudiced by defendants' failure to object and except at the opening of the trial. The court later pointed out to counsel for defendants that the record should show an offer of proof under the cross complaints. Whereupon counsel made such offer. An objection thereto was sustained and exception saved. No suggestion was then made that the offer or ruling came too late or that the procedure was incorrect, hence we think the proposition not entitled to consideration now. True, there is evidence in the record that Nye A. Wimer had released Plumbe and Downs on their liability and accepted plaintiff in their stead, but under the court's holding that matter could not be adjudicated on the trial, and defendant could get no relief against either.

4. In any event the decree herein was probably too broad in its terms, but in view of the foregoing, and the reversal thereby necessitated, it need not be further examined.

5. Plaintiff's business, if lawfully conducted, and involving no violation of contract or breach of faith with defendants, did give it such rights as would entitle it to a mandatory injunction to compel the managers to perform their duty as trustees. The consequences of a violation of that duty might be greater, more far-reaching, and of a different character as to plaintiff than as to individual unit owners or others not rightfully and extensively engaged in the business of dealing in such units. *Kirby v. U. P. Ry. Co.,* 51 Colo. 509, 515, 119 Pac. 1042, Ann. Cas. 1913B, 461.

All these parties admit the legality of the trust agree-

ment, base their claims upon it, and are bound by its terms. We are not, therefore, required herein to do more than construe it so far as necessary to determine the respective rights of these parties under it.

For the foregoing reasons the judgment is reversed and the cause remanded for further proceedings in conformity herewith.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE ADAMS concur.